Filed 2/21/18

CERTIFIED FOR PARTIAL PUBLICATION[*]

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| DELANE HURLEY, | D070098 |
| Plaintiff and Appellant, | |
| v. | (Super. Ct. No. 37-2013-00050757-CU-OE-NC) |
| CALIFORNIA DEPARTMENT OF PARKS AND RECREATION et al., | |
| Defendants and Appellants. | |

APPEALS from a judgment of the Superior Court of San Diego County, Robert P. Dahlquist, Judge. Reversed in part and affirmed as modified.

Stewart and Musell, Wendy E. Musell, and Elisa J. Stewart for Plaintiff and Appellant.

Xavier Becerra, Attorney General, Chris A. Knudsen, Senior Assistant Attorney General, Celine M. Cooper, Christine B. Mersten, and Jodi L. Cleesattle, Deputy

---

[*] Pursuant to California Rules of Court, rule 8.1110, this opinion is certified for publication with the exception of parts I, III, and V through VII.

Attorneys General, for Defendant and Appellant California Department of Parks and Recreation.

Savage Day and Kelly Savage Day for Defendant and Appellant Leda Seals.

Plaintiff Delane Hurley appeals a judgment in her action against defendants California Department of Parks and Recreation (DPR) and Leda Seals (together Defendants) that alleged, inter alia, causes of action for sexual orientation discrimination, sex discrimination, sexual harassment, retaliation, and failure to prevent discrimination, harassment, and retaliation, all in violation of the Fair Employment and Housing Act (FEHA; Gov. Code, § 12900 et seq.), and a cause of action for violation of the Information Practices Act (IPA; Civ. Code, § 1798 et seq.[1]) and additionally alleged causes of action against Seals only for intentional infliction of emotional distress (IIED) and negligent infliction of emotional distress (NIED). Following trial, the jury returned verdicts in favor of Defendants on the FEHA causes of action, against Defendants on the IPA cause of action, and against Seals on the IIED and NIED causes of action. The jury awarded Hurley $19,200 for past economic damages and $19,200 for past noneconomic losses against both Defendants, and $28,800 in punitive damages against Seals only. The court denied Defendants' motions for judgment notwithstanding the verdict (JNOV). On appeal, Hurley contends the trial court erred by excluding evidence that was relevant to her FEHA causes of action.

---

[1]     All further statutory references are to the Civil Code unless otherwise specified.

DPR and Seals filed appeals challenging the judgment against them on the IPA cause of action and the trial court's denial of their JNOV motions. In its appeal, DPR contends: (1) there is insufficient evidence to support the finding it violated the IPA; and (2) the litigation privilege under section 47, subdivision (b), barred the IPA cause of action against it. In her appeal, Seals contends: (1) there is insufficient evidence to support the finding she violated the IPA; (2) the litigation privilege barred the IPA cause of action against her; (3) the IPA cause of action was alleged under, and the jury was instructed on, a statute (i.e., § 1798.45) that was inapplicable to her; (4) there is insufficient evidence to support the findings against her on the IIED and NIED causes of action; (5) the workers' compensation exclusivity doctrine barred the IIED and NIED causes of action against her; and (6) the punitive damages award against her must be reversed for, inter alia, instructional error and insufficiency of the evidence to support it.

Based on our reasoning below, we affirm the judgment, except for the award of economic damages against DPR, and modify the judgment accordingly.

FACTUAL AND PROCEDURAL BACKGROUND

In December 2009, Hurley was hired by Seals as a staff services analyst (SSA) for DPR's Ocotillo Wells Off-Highway Motor Vehicle Recreation District (OWD). Seals was Hurley's direct supervisor from the date of her hiring until she (Hurley) went on medical leave on September 28, 2011. Kathy Dolinar, OWD's district superintendent, was Seals's supervisor.

Seals socialized with her staff during and after work hours. She asked overly personal questions of OWD employees and gave them unsolicited personal advice. Seals

3

and other employees often discussed sex and sexual orientation. Seals expressed frustration that Hurley did not share personal information with her. Seals was also known to be a micromanager.

In January 2011, Hurley met with Seals regarding the addition of her domestic partner as a beneficiary of her health insurance. On or about September 27, 2011, Seals, while in her office, discussed with Charles Rennie, a DPR nonsupervisory employee, how she might more effectively supervise Hurley. During that discussion, Seals disclosed to Rennie information from Hurley's personnel file that she had failed her probation in a prior job. At the time of the discussion, Hurley was standing outside of Seals's office, heard Seals discussing her personnel file with Rennie, and saw her personnel file open on Seals's desk. Hurley became sick and threw up. She then went to her office, wrote an email to Dolinar about the incident, and told Seals she was leaving work. Hurley went on medical leave the following day, September 28, and never returned to work at OWD.[2]

In October 2011, Hurley filed a formal discrimination complaint with DPR's Human Rights Office (HRO), alleging discrimination, harassment, and retaliation. In November or December, HRO began its investigation of Hurley's complaint. During the course of its investigation, HRO interviewed many employees. In March 2012, Seals was placed on administrative leave for one month, which leave was twice extended for

_____

[2]     Hurley remained on leave until August 2012, when she accepted an SSA position at DPR's Monterey location.

4

additional one month periods. While on administrative leave, Seals asked Dolinar to deliver to her home her (Seals's) supervisory drop file that she had maintained for Hurley so that she (Seals) could review it in preparation for her upcoming HRO interview regarding Hurley's complaint. Dolinar agreed and delivered the drop file to Seals at her home.

HRO completed its investigation of Hurley's complaint in May 2012 and informed Hurley and Seals of its determinations. Seals went on medical leave in June and, except for a short period in August (during which she worked at DPR's Sacramento office), remained on medical leave thereafter. In late December, DPR notified Seals that her employment was going to be terminated. In January 2013, Seals retired in lieu of termination, but never returned the supervisory drop file to DPR.

In August 2012, Hurley accepted an SSA position at DPR's Monterey location. On October 17, 2012, Hurley filed a complaint, alleging causes of action against both DPR and Seals for: (1) harassment based on sex and sexual orientation in violation of FEHA; (2) retaliation in violation of FEHA; (3) IIED; and (4) NIED. It also alleged causes of action against DPR for: (1) failure to prevent harassment based on sex and sexual orientation in violation of FEHA; (2) employment discrimination based on sex and sexual orientation in violation of FEHA; (3) failure to remedy harassment in violation of FEHA; and (4) negligent hiring, retention, and supervision. On April 29 and 30, 2013, during the course of discovery in this case, Seals's counsel delivered to Hurley over 9,000 pages of documents, including the supervisory drop file that Seals had retained after her retirement and given to her (Seals's) counsel. On or about December 20, 2013, Hurley

5

filed a motion for leave to file a first amended complaint, which would add causes of action against Defendants for: (1) invasion of constitutional right to privacy; (2) invasion of privacy by public disclosure; (3) breach of medical confidentiality; and (4) violation of the IPA. On that date, the trial court granted Hurley's motion for leave and her first amended complaint was filed. The court subsequently granted in part DPR's motion for summary adjudication and dismissed the causes of action against DPR for IIED, NIED, and negligent hiring, retention, and supervision. The court denied Seals's motion for summary adjudication on the four privacy causes of action.

During a four-week trial, 26 witnesses testified, including Hurley, Seals, and Dolinar, and 71 exhibits were admitted into evidence. The jury returned verdicts in favor of Defendants on the FEHA causes of action, against Defendants on the IPA cause of action, and against Seals on the IIED and NIED causes of action. The jury awarded Hurley $19,200 for past economic damages and $19,200 for past noneconomic losses against both Defendants and $28,800 in punitive damages against Seals only. On December 1, 2015, the trial court entered judgment on the jury verdict. On February 5, 2016, the court denied Defendants' JNOV motions.

Hurley timely filed a notice of appeal. DPR and Seals each filed a timely notice of appeal.

6

DISCUSSION

*HURLEY'S APPEAL*

I

*Exclusion of Evidence*

Hurley contends the trial court erred by excluding certain evidence that was relevant to her FEHA causes of action and therefore the judgment in favor of Defendants on those causes of action must be reversed.

A. *Admissibility of evidence; standard of review*.

"Except as otherwise provided by statute, all relevant evidence is admissible." (Evid. Code, § 351.) "Relevant evidence" is "evidence, including evidence relevant to the credibility of a witness or hearsay declarant, having any tendency in reason to prove or disprove any disputed fact that is of consequence to the determination of the action." (Evid. Code, § 210.) A trial court has broad discretion in determining the relevance of evidence, but it lacks discretion to admit irrelevant evidence. (*People v. Cowan* (2010) 50 Cal.4th 401, 482.) An appellate court "examines for abuse of discretion a decision on admissibility that turns on the relevance of the evidence in question. [Citations.]" (*People v. Waidla* (2000) 22 Cal.4th 690, 717-718.) Furthermore, Evidence Code section 352 provides a trial court with discretion to exclude relevant evidence in certain circumstances, stating:

> "The court in its discretion may exclude evidence if its probative value is substantially outweighed by the probability that its admission will (a) necessitate undue consumption of time or (b) create substantial danger of undue prejudice, of confusing the issues, or of misleading the jury."

7

"An exercise of discretion under Evidence Code section 352 will be disturbed on appeal only if the trial court exercised it in an arbitrary, capricious, or patently absurd manner resulting in a manifest miscarriage of justice." (*Boeken v. Philip Morris, Inc.* (2005) 127 Cal.App.4th 1640, 1685.) Alternatively stated, "[a] trial court's exercise of discretion in admitting or excluding evidence is reviewable for abuse [citation] and will not be disturbed except on a showing the trial court exercised its discretion in an arbitrary, capricious, or patently absurd manner that resulted in a manifest miscarriage of justice." (*People v. Rodriguez* (1999) 20 Cal.4th 1, 9-10.)

To obtain reversal of a judgment based on evidentiary error, the appellant must show that error was prejudicial. (Cal. Const., art. VI, § 13; Evid. Code, § 354.) Evidence Code section 354 provides in part: "A verdict or finding shall not be set aside, nor shall the judgment or decision based thereon be reversed, by reason of the erroneous exclusion of evidence unless the court which passes upon the effect of the error or errors is of the opinion that the error or errors complained of resulted in a miscarriage of justice . . . ." "Claims of evidentiary error under California law are reviewed for prejudice applying the 'miscarriage of justice' or 'reasonably probable' harmless error standard of *People v. Watson* (1956) 46 Cal.2d 818, 836, 299 P.2d 243, that is embodied in article VI, section 13 of the California Constitution. Under the *Watson* harmless error standard, it is the burden of appellants to show that it is reasonably probable that they would have received a more favorable result at trial had the error not occurred. [Citations.]" (*Christ v.*

*Schwartz* (2016) 2 Cal.App.5th 440, 447 (*Schwartz*).)  Article VI, section 13 of the

California Constitution provides:

> "No judgment shall be set aside, or new trial granted, in any cause,
> on the ground . . . of the improper admission or rejection of
> evidence . . . , unless, after an examination of the entire cause,
> including the evidence, the court shall be of the opinion that the error
> complained of has resulted in a miscarriage of justice."

Likewise, Code of Civil Procedure section 475 provides in part:  "No judgment, decision,

or decree shall be reversed or affected by reason of any error, ruling, instruction, or

defect, unless it shall appear from the record that such error, ruling, instruction, or defect

was prejudicial, and also that by reason of such error, ruling, instruction, or defect, the

said party complaining or appealing sustained and suffered substantial injury, and that a

different result would have been probable if such error, ruling, instruction, or defect had

not occurred or existed.  There shall be no presumption that error is prejudicial, or that

injury was done if error is shown."  A miscarriage of justice will be declared by an

appellate court only if, after examining all of the evidence, it is of the opinion it is

reasonably probable the appellant would have obtained a more favorable result had the

trial court not erred.  (*Cassim v. Allstate Ins. Co.* (2004) 33 Cal.4th 780, 800 (*Cassim*).)

B.  *Appellant's burden on appeal*.

A trial court's judgment or order is presumed to be correct.  In *Denham v. Superior*

*Court* (1970) 2 Cal.3d 557 (*Denham*), the court stated:

> "[I]t is settled that:  'A judgment or order of the lower court is
> *presumed correct*.  All intendments and presumptions are indulged
> to support it on matters as to which the record is silent, and error
> must be affirmatively shown [by the appellant].  This is not only a
> general principle of appellate practice but an ingredient of the

9

constitutional doctrine of reversible error.' [Citations.]" (*Id.* at p. 564.)

"The burden of affirmatively demonstrating error is on the appellant." (*Fundamental Investment etc. Realty Fund v. Gradow* (1994) 28 Cal.App.4th 966, 971 (*Gradow*).)  The appellant has the additional burden on appeal of affirmatively demonstrating prejudice as a result of an asserted error by a trial court.  (*Pool v. City of Oakland* (1986) 42 Cal.3d 1051, 1069 (*Pool*).)  Therefore, an appellant has a dual burden:  (1) to show error; and (2) to show that error was prejudicial and requires reversal of the judgment.  (*Gould v. Corinthian Colleges, Inc.* (2011) 192 Cal.App.4th 1176, 1181 (*Gould*); *In re Marriage of Behrens* (1982) 137 Cal.App.3d 562, 575 (*Behrens*); Eisenberg et al., Cal. Practice Guide:  Civil Appeals and Writs (The Rutter Group 2017) ¶ 8:291, p. 8-207 ["The 'prejudicial error' rule effectively imposes a dual burden on appellants:  They must first prove error, and then must show the error was 'prejudicial.'  [¶] . . . It may be necessary to devote as much of appellant's opening brief to the prejudice issue as to establishing the error itself."])

Furthermore, "[a]n appellant must provide an argument and legal authority to support his contentions.  This burden requires more than a mere assertion that the judgment is wrong.  'Issues do not have a life of their own:  If they are not raised or supported by argument or citation to authority, [they are] . . . waived.'  [Citation.]  It is not our place to construct theories or arguments to undermine the judgment and defeat the presumption of correctness.  When an appellant fails to raise a point, or asserts it but fails to support it with reasoned argument and citations to authority, we treat the point as

10

waived.  [Citation.]"  (*Benach v. County of Los Angeles* (2007) 149 Cal.App.4th 836, 852 (*Benach*).)

C. *Waiver.*

Hurley asserts the trial court erred by excluding certain testimony and exhibits that were relevant to her FEHA discrimination, harassment, retaliation, and failure to prevent discrimination, harassment, and retaliation causes of action.  In her appellant's opening brief, Hurley sets forth a virtual "laundry list" of certain evidence that was purportedly wrongly excluded by the court, which list consists of over 120 items of testimony and exhibits that she argues should have been admitted.  In general, she argues those items of evidence were relevant to her FEHA claims:  (1) as "me too" evidence under *Pantoja v. Anton* (2011) 198 Cal.App.4th 87 (*Pantoja*) and related cases;[3] (2) to prove Defendants' intent or another fact other than character or disposition (Evid. Code, § 1101, subd. (b)); and/or (3) to impeach the credibility of Defendants' witnesses (*id*., subd. (c)).  She argues the court, in general, abused its discretion under Evidence Code section 352 by excluding those items of evidence.

Importantly, Hurley also argues, in a *conclusory* manner, that the trial court's errors in excluding those items of evidence constituted prejudicial error that requires reversal of the verdicts against her on the FEHA causes of action.  In particular, in her opening brief, she argues:  (1) "the trial court abused its discretion in a series of

---

3      "Me too" evidence presumably refers to evidence of similar conduct by Defendants involving employees other than Hurley.  (Cf. *Pantoja*, *supra*, 198 Cal.App.4th at pp. 92, 109-110.)

evidentiary rulings, which taken either individually or as a whole, clearly prejudiced Appellant, resulting in a miscarriage of justice;" (2) "[t]hese rulings taken together and separately are prejudicial error;" (3) "[t]he trial court refused to allow testimony that demonstrated [Defendants'] intent and motive to discriminate and harass [Hurley] under [Evidence] Code [section] 1101[, subdivisions (b) and (c)], requiring reversal as prejudicial error;" (4) "the trial court's exclusion of this evidence was prejudicial error;" (5) "[t]he superior court's exclusion of impeachment evidence was therefore reversible error;" (6) "[t]he trial court's exclusion of [evidence of Hurley's] protected activities, the timing of her protected activities and the response of [Defendants] to [Hurley's] protected activities is at the heart of [Hurley's] retaliation case and such exclusion was prejudicial error;" and (7) "[t]he trial court's exclusion of this testimony is manifest error, requiring retrial." In her reply brief, Hurley argues that the exclusion of her relevant evidence, "when taken as a whole, along with the other testimony discussed herein, demonstrates that it is reasonably probable that a more favorable result would have been reached" had that evidence been admitted. By so arguing only in a conclusory manner, Hurley wholly omits any substantive analysis or discussion of how the evidence that was purportedly wrongly excluded by the trial court probably would have affected the jury's verdicts on her FEHA causes of action had that evidence been admitted. In particular, she wholly omits any fair summarization of the evidence that was admitted at trial so that we could then consider the question of whether it is reasonably probable she would have obtained a more favorable result at trial had the court admitted the evidence that she asserts was wrongly excluded. (Cal. Const., art. VI, § 13; Evid. Code, § 354; Code Civ. Proc., § 475;

12

*Cassim*, *supra*, 33 Cal.4th at p. 800; *Schwartz*, *supra*, 2 Cal.App.5th at p. 447; *Watson*, *supra*, 46 Cal.2d at p. 836.) Because Hurley has not presented any substantive legal analysis or argument showing that the evidentiary errors of which she complains were prejudicial (i.e., the errors caused a miscarriage of justice or it is reasonably probable she would have obtained a more favorable result absent the errors), we conclude she has waived her contention on appeal that the trial court erred by excluding the items of evidence that she asserts were wrongly excluded. (Cf. *Overhill Farms, Inc. v. Lopez* (2010) 190 Cal.App.4th 1248, 1271 [appellant waived contention that trial court erroneously excluded evidence by failing to make any effort to show purported error was prejudicial]; *Benach*, *supra*, 149 Cal.App.4th at p. 852; *Shaw v. County of Santa Cruz* (2008) 170 Cal.App.4th 229, 282 [appellants "fail[ed] to demonstrate how any claim of error in the trial court's exclusion of evidence would have made any difference in the outcome"].) Alternatively stated, by merely asserting the trial court's evidentiary errors were prejudicial without presenting *any* substantive argument attempting to show *how* those errors were prejudicial, Hurley waived her contention on appeal that the court erred by excluding the items of evidence and therefore we need not discuss the merits of that contention. (*Overhill Farms*, at p. 1271; *Shaw*, at p. 282; *People v. Ham* (1970) 7 Cal.App.3d 768, 783 (*Ham*); *Jones v. Superior Court* (1994) 26 Cal.App.4th 92, 99 (*Jones*).)

Even if Hurley did not waive her contention on appeal that the trial court erred by excluding certain evidence, we nevertheless would conclude she has not carried her burden on appeal to show that the evidentiary errors of which she complains were

prejudicial. She has not shown the purported evidentiary errors caused a miscarriage of justice (i.e., it is reasonably probable that she would have obtained a more favorable result had the court not so erred). (Cal. Const., art. VI, § 13; Evid. Code, § 354; Code Civ. Proc., § 475; *Cassim*, *supra*, 33 Cal.4th at p. 800; *Schwartz*, *supra*, 2 Cal.App.5th at p. 447; *Watson*, *supra*, 46 Cal.2d at p. 836.) As discussed *ante*, an appellant has two burdens on appeal: (1) to show error; and (2) to show that error was prejudicial. Hurley cannot carry her dual burdens on appeal by showing only error without additionally showing that error was prejudicial. (*Pool*, *supra*, 42 Cal.3d at p. 1069; *Gould*, *supra*, 192 Cal.App.4th at p. 1181; *Behrens*, *supra*, 137 Cal.App.3d at p. 575; Eisenberg et al., Cal. Practice Guide: Civil Appeals and Writs, *supra*, at ¶ 8:291, p. 8-207.) Because Hurley has made no attempt to show the evidentiary errors of which she complains were prejudicial, she has not carried her burden on appeal to show those errors were prejudicial and require reversal of the verdicts against her on the FEHA causes of action.[4]

---

[4]     To the extent Hurley asserts the purported evidentiary errors are reversible per se, we reject that assertion. The California Constitution, pertinent statutes, and long-standing case law all require prejudicial error (i.e., a miscarriage of justice or showing that it is reasonably probable that the appellant would have obtained a more favorable result had the trial court not so erred) before a judgment may be reversed based on evidentiary error. (Cal. Const., art. VI, § 13; Evid. Code, § 354; Code Civ. Proc., § 475; *Cassim*, *supra*, 33 Cal.4th at p. 800; *Schwartz*, *supra*, 2 Cal.App.5th at p. 447; *Watson*, *supra*, 46 Cal.2d at p. 836.) Although Hurley cites *Pantoja*, *supra*, 198 Cal.App.4th 87 and *Johnson v. United Cerebral Palsy/Spastic Children's Foundation* (2009) 173 Cal.App.4th 740 as support for her argument that the trial court's evidentiary errors in this case were necessarily prejudicial and require reversal of the FEHA verdicts against her, neither of those cases hold that evidentiary error by exclusion of "me too" evidence or otherwise is reversible per se error. Rather, *Pantoja* implicitly applied the *Watson* standard for prejudicial error by discussing the evidence in that case and concluding: "There is a reasonable probability that this [excluded] evidence of Anton's gender bias, which

14

Accordingly, we affirm the verdicts in favor of Defendants on the FEHA causes of action.[5]

## DEFENDANTS' APPEALS

## II

### *Substantial Evidence to Support the IPA Verdicts*

Defendants contend the trial court erred by denying their JNOV motions because there is insufficient evidence to support the jury's verdicts finding them liable for violation of the IPA.

A. *The IPA generally*.

Enacted in 1977, the IPA generally limits the right of governmental agencies to disclose personal information about an individual and imposes liability on agencies and individuals for improperly disclosing personal information maintained by agencies. (§§ 1798.1, subd. (c), 1798.24, 1798.45, 1798.53; *Bates v. Franchise Tax Bd.* (2004) 124

---

corroborated Pantoja's other evidence of Anton's gender bias, would have tipped the balance in a credibility contest like this case." (*Pantoja*, at p. 119, fn. omitted.) *Johnson* involved an appeal from a summary judgment and therefore did not address the question of the applicable standard of prejudice for evidentiary error at trial. (*Johnson*, at pp. 744-745, 768.) Therefore, Hurley does not show the trial court's purported evidentiary errors were reversible per se.

5    Even if we were to address the merits of Hurley's assertion that the trial court erred by excluding her listed evidence, based on our review of the record we strongly doubt that she carried her burden on appeal to show the court abused its discretion under Evidence Code section 352 or otherwise by excluding any of those items of evidence, much less, as discussed above, that any such purported errors were prejudicial. (*Denham*, *supra*, 2 Cal.3d at p. 564; *Gradow*, *supra*, 28 Cal.App.4th at p. 971; *Pool*, *supra*, 42 Cal.3d at p. 1069; *Gould*, *supra*, 192 Cal.App.4th at p. 1181.)

Cal.App.4th 367, 373; *Jennifer M. v. Redwood Women's Health Center* (2001) 88 Cal.App.4th 81, 87-88.) Importantly for this appeal, the IPA defines "personal information" as "any information that is maintained by an agency that identifies or describes an individual, including, but not limited to, his or her name, social security number, physical description, home address, home telephone number, education, financial matters, and medical or employment history. It includes statements made by, or attributed to, the individual." (§ 1798.3, subd. (a).) The IPA defines a "record" as "any file or grouping of information about an individual that is maintained by an agency by reference to an identifying particular such as the individual's name, photograph, finger or voice print, or a number or symbol assigned to the individual." (§ 1798.3, subd. (g).) It defines "disclose" as "to disclose, release, transfer, disseminate, or otherwise communicate all or any part of any record orally, in writing, or by electronic or any other means to any person or entity." (§ 1798.3, subd. (c).)

Section 1798.24 limits disclosures of personal information maintained by an agency to certain persons and certain circumstances, stating in part:

> "An agency shall not disclose any personal information in a manner that would link the information disclosed to the individual to whom it pertains unless the information is disclosed, as follows: [¶] . . . [¶]
>
> "(d) To those officers, employees, attorneys, agents, or volunteers of the agency that has custody of the information if the disclosure is relevant and necessary in the ordinary course of the performance of their official duties and is related to the purpose for which the information was acquired."

The IPA also requires agencies to properly maintain records containing personal information.[6]  (§ 1798.21.)  If an agency violates its duties under the IPA, it may be subject to liability for damages suffered by an individual.  (§ 1798.45.)  Section 1798.45 provides in part:

> "An individual may bring a civil action against an agency whenever such agency does any of the following:  [¶] . . .
>
> "(b)  Fails to maintain any record concerning any individual with such accuracy, relevancy, timeliness, and completeness as is necessary to assure fairness in any determination relating to the qualifications, character, rights, opportunities of, or benefits to the individual that may be made on the basis of such record, if, as a proximate result of such failure, a determination is made which is adverse to the individual.
>
> "(c)  *Fails to comply with any* other *provision of this chapter* [e.g., § 1798.24], or any rule promulgated thereunder, *in such a way as to have an adverse effect on an individual*."  (Italics added.)

Likewise, an individual may also be subject to liability for violation of the IPA. (§ 1798.53.)  Section 1798.53 provides in part:  "Any person, other than an employee of the state or of a local government agency acting solely in his or her official capacity, who intentionally discloses information, not otherwise public, which they know or should reasonably know was obtained from personal information maintained by a state

---

6    Section 1798.21 provides:  "Each agency shall establish appropriate and reasonable administrative, technical, and physical safeguards to ensure compliance with the provisions of this chapter, to ensure the security and confidentiality of records, and to protect against anticipated threats or hazards to their security or integrity which could result in any injury."

17

agency . . . shall be subject to a civil action, for invasion of privacy, by the individual to whom the information pertains."

B. *Defendants' JNOV motions and trial court's order.*

After the jury returned verdicts finding them liable on Hurley's cause of action for violation of the IPA, Defendants filed JNOV motions, arguing, inter alia, that there was insufficient evidence to support findings that they violated the IPA. DPR argued there was insufficient evidence to support findings that it improperly maintained or disclosed any records containing Hurley's personal information and that she suffered an adverse effect from its alleged violation of the IPA. In particular, it argued there was insufficient evidence that the supervisory drop file delivered by Dolinar to Seals contained any personal information. It also argued the evidence clearly showed that the drop file was properly disclosed to Seals as relevant and necessary in the ordinary course of the performance of her supervisory duties. Finally, it argued Hurley did not present substantial evidence showing she suffered an adverse effect from its alleged IPA violation, testifying only that she was "scared" that Seals had possession of the drop file containing information about her.

Seals argued there was insufficient evidence to support a finding that she improperly disclosed any records containing Hurley's personal information. In particular, she argued that her disclosure to Rennie of information regarding Hurley and her (Seals's) subsequent receipt of the supervisory drop file were proper because, inter alia, she (Seals) was acting solely in her official capacity as a supervisor in so doing.

18

Hurley opposed both motions, arguing there was substantial evidence to support findings that both DPR and Seals violated the IPA. Hurley argued, inter alia, that there was substantial evidence to support findings that the supervisory drop file was a record that contained her personal information, that DPR and Seals improperly disclosed her personal information, and that she suffered an adverse effect from that disclosure.

The trial court issued an order denying both JNOV motions, finding there was substantial evidence to support the jury's verdicts finding that both DPR and Seals violated the IPA.

C. *Analysis*.

Defendants assert the trial court erred by denying their JNOV motions to vacate the verdicts against them on the IPA cause of action because there is insufficient evidence to support those verdicts.

"A motion for judgment notwithstanding the verdict may be granted only if it appears from the evidence, viewed in the light most favorable to the party securing the verdict, that there is no substantial evidence in support. [Citation.]" (*Sweatman v. Department of Veterans Affairs* (2001) 25 Cal.4th 62, 68.) On appeal from an order denying a JNOV motion, "the standard of review is whether any substantial evidence— contradicted or uncontradicted—supports the jury's conclusion. [Citations.]" (*Ibid.*) Accordingly, we may reverse an order denying a JNOV motion "only if, reviewing all the evidence in the light most favorable to [Hurley], resolving all conflicts, and drawing all inferences in her favor, and deferring to the implicit credibility determinations of the trier

of fact, there was no substantial evidence to support the jury's verdict in her favor." (*Begnal v. Canfield & Associates, Inc.* (2000) 78 Cal.App.4th 66, 72.)

*Record containing personal information.* Applying that standard of review to the evidence admitted at trial, we conclude there is substantial evidence to support the verdicts against Defendants on Hurley's IPA cause of action. First, contrary to Defendants' assertion, there is substantial evidence to support a finding by the jury that Seals maintained on behalf of DPR a record regarding Hurley that contained her personal information within the meaning of the IPA. In particular, the supervisory drop file that Seals maintained regarding Hurley presumably identified Hurley by her name and contained information about her, thereby meeting the IPA's definition of "record." (§ 1798.3, subd. (g).) Furthermore, the jury could reasonably infer that the drop file contained "personal information" within the meaning of that term under the IPA. (*Id.*, subd. (a).) Both Seals and Dolinar testified that a supervisory drop file typically would contain work-related notes, counseling memoranda, and other documents regarding corrective or disciplinary actions taken by a supervisor (e.g., Seals) and other matters regarding employees he or she supervises (e.g., Hurley). Furthermore, the jury could reasonably infer the file also contained a copy of Hurley's application to add her domestic partner as a beneficiary of her health insurance. That file also contained a note dated December 5, 2011, from Hurley's psychologist placing Hurley on leave for one month. Seals was also in possession of information, whether originating from Hurley's official personnel file or the drop file, that Hurley had failed her probation at a prior job. Accordingly, there is substantial evidence to support a finding by the jury that Seals and

DPR maintained information that "identifie[d] or describe[d]" Hurley within the meaning of section 1798.3, subdivision (a)'s definition of "personal information."

Contrary to Defendants' assertion, the IPA's definition of "record" and "personal information" does *not* restrict an agency's maintenance of qualifying personal information to only a single, official personnel file. In support of their assertion, Defendants cite *Moghadam v. Regents of University of California* (2008) 169 Cal.App.4th 466 (*Moghadam*). However, *Moghadam* is factually inapposite to this case and, in any event, we are not persuaded by its reasoning. The crux of the plaintiff's claim against the defendants in *Moghadam* was that they wrongfully refused to allow him to inspect and obtain copies of some of the midterm and final exams he took as a UCLA student. (*Id.* at pp. 469-470.) Following the reasoning of *Owasso Independent School District No. 1-011 v. Falvo* (2002) 534 U.S. 426 (*Falvo*), which interpreted and applied the Federal Educational Rights and Privacy Act (FERPA), *Moghadam* concluded the plaintiff's UCLA exams were not "records" under the IPA because they were not institutional records that were "preserved in the ordinary course of business by a single, central custodian." (*Moghadam*, at p. 480.) The court further concluded the plaintiff's exams did not contain "personal information" under the IPA because they did not identify or describe him, but instead only discussed and analyzed the issues that were the subject of the exams. (*Id.* at p. 483.) It stated: "[A] record that contains only the individual's name, without any other identifying or descriptive information, is not 'personal information' within the meaning of the IPA." (*Id.* at p. 484.) Accordingly, the court concluded the

21

plaintiff's student exams were not "records" containing "personal information" within the meaning of the IPA. (*Ibid.*)

We decline to adopt *Moghadam*'s interpretation of the term "records" under the IPA. There is nothing in the IPA's language showing that the Legislature intended to limit the definition of "records" to only documents or other information maintained by an agency at a single, central location. The IPA defines a "record" as "any file or grouping of information about an individual that is maintained by an agency by reference to an identifying particular such as the individual's name, photograph, finger or voice print, or a number or symbol assigned to the individual." (§ 1798.3, subd. (g).) That definition does not expressly or implicitly include any requirement or limitation that the information be maintained at a "single, central location" to qualify as a "record" under the IPA. Furthermore, Defendants' proffered interpretation that an agency's "records" under the IPA can only be maintained at a single, central location conflicts with other language in the IPA that implicitly recognizes that personal information may be maintained at multiple locations. For example, section 1798.34 generally provides individuals with the right to inspect an agency's records that contains personal information about them. Under that statute, an agency is given up to 60 days after a request to permit an individual to inspect all personal information in "records that are geographically dispersed."[7]

_____

[7] If an agency's records containing personal information are active and not geographically dispersed, the time period for permitting inspection by an individual is reduced to 30 days. (§ 1798.34, subd. (a).)

(§ 1798.34, subd. (a).)  It is impossible for records that are geographically dispersed to be maintained by an agency at a single, central location.  Accordingly, we reject Defendants' proffered interpretation of the term "record" under the IPA as being restricted to only a single, central location, such as the official personnel file maintained by DPR regarding Hurley.  Neither *Moghadam* nor *Falvo* persuades us to interpret the term "record" under IPA so restrictively.  In particular, *Falvo*, on which *Moghadam* relied, involved FERPA, a federal statute involving educational rights and definitions of terms different from those in the IPA.[8]

Contrary to Defendants' apparent assertion, there is nothing in the IPA's definition of "personal information" that restricts that information to that maintained by an agency in a single, central location.  The IPA defines "personal information" as "any information that is maintained by an agency that identifies or describes an individual, including, but not limited to, his or her name, social security number, physical description, home address, home telephone number, education, financial matters, and medical or employment history.  It includes statements made by, or attributed to, the individual." (§ 1798.3, subd. (a).)  That statutory language does not include any geographic restriction or limitation on the location of the record containing personal information that is maintained by an agency.

---

8     For example, FERPA defines "education records" as "those records, files, documents, and other materials which . . .  [¶]  (i) contain information directly related to a student; and  [¶]  (ii) are maintained by an educational agency or institution or by a person acting for such agency or institution."  (20 U.S.C. § 1232g(a)(4)(A); *Moghadam*, *supra*, 169 Cal.App.4th at p. 478.)

Furthermore, contrary to Defendants' assertion, the information about Hurley that was allegedly wrongfully disclosed in this case did not, as in *Moghadam*, consist solely of her name without any other identifying or descriptive information. (Cf. *Moghadam*, *supra*, 169 Cal.App.4th at p. 484.) Rather, as discussed *ante*, there is substantial evidence to support a finding by the jury that Seals's supervisory drop file contained: (1) her work-related notes, counseling memoranda, and other documents regarding corrective or disciplinary actions and other matters regarding Hurley; (2) a copy of Hurley's application to add her domestic partner as a beneficiary of her health insurance; and (3) a note dated December 5, 2011, from Hurley's psychologist placing Hurley on leave for one month. Seals also possessed information, whether originating from Hurley's official personnel file or the drop file, that Hurley had failed her probation at a prior job. It cannot be reasonably disputed that the above information "identifie[d] or describe[d]" Hurley within the meaning of "personal information" under the IPA. (§ 1798.3, subd. (a).) Because the personal information that Defendants allegedly wrongfully disclosed did not consist only of Hurley's name, *Moghadam* is factually inapposite and does not support Defendants' assertion that the information disclosed by them did not constitute "personal information" under the IPA.

*Disclosure of personal information*. Second, contrary to Defendants' assertion, there is substantial evidence to support a finding that they disclosed personal information about Hurley in violation of the IPA. In particular, there is substantial evidence that DPR and/or Seals improperly disclosed Hurley's personal information on at least two occasions. The evidence showed that on or about September 27, 2011, Seals disclosed to

24

Rennie information that she learned from Hurley's personnel file that she (Hurley) had failed her probation at a prior job. That information clearly was personal information within the meaning of the IPA. Furthermore, the jury could reasonably find that Seals's disclosure of that information to Rennie, a nonsupervisory DPR employee with a lesser rank than Hurley, was *not* "relevant and necessary in the ordinary course of the performance of [Seals's or Rennie's] official duties and [was not] related to the purpose for which the information was acquired." (§ 1798.24, subd. (d).) Although Defendants argued at trial that Rennie was Seals's de facto mentor, the jury could nevertheless reasonably reject Defendants' argument that Seals properly disclosed that personal information to Rennie under the IPA (i.e., the disclosure was relevant and necessary in the ordinary course of performance of their official duties).[9] (§ 1798.24, subd. (d).)

---

[9] Furthermore, contrary to Defendants' assertion, the fact that Hurley's counsel in closing argument implicitly referred only to disclosure of the supervisory drop file, and not to the Rennie disclosure, did not preclude the jury from considering evidence that showed violations of the IPA other than their wrongful disclosure of the supervisory drop file and finding liability under the IPA based thereon. In closing, Hurley's counsel argued in pertinent part: "The privacy violations is [sic] really a simple inquiry. Did Ms. Seals have a right to maintain and possess documents of Ms. Hurley's that related to her work information, her medical information, her social security information? No. Those were [DPR] documents and they affected her right to privacy. And they were distributed in the world, to her attorney." Defendants do not cite, and we are unaware of, any case or other authority supporting their assertion that counsels' closing arguments necessarily limit what evidence a jury can consider and what legal theories a jury can apply in deciding the issues before it (e.g., liability under the IPA). Therefore, we conclude the jury could have based its verdicts finding Defendants liable for violations of the IPA on evidence other than DPR's alleged wrongful disclosure of the supervisory drop file to Seals and Seals's retention and disclosure to her counsel of that file thereafter (e.g., Seals's disclosure to Rennie of Hurley's personal information).

25

The evidence also showed that after Seals was placed on administrative leave in March 2012, she asked Dolinar to deliver to her home the supervisory drop file for Hurley so that she (Seals) could review it in preparation for her upcoming HRO interview regarding Hurley's complaint. Dolinar agreed and delivered the drop file to Seals at her home. The jury could reasonably find that Dolinar, on behalf of DPR, improperly disclosed to Seals personal information contained in the supervisory drop file regarding Hurley in violation of the IPA. In particular, the jury could reasonably find that because at the time of that disclosure Seals was on administrative leave, she was not then Hurley's supervisor and did not have any other relevant and necessary purpose in the ordinary course of the performance of her duties for the personal information about Hurley that was contained in the drop file. (§ 1798.24, subd. (d).) Although Defendants argued below and again argue on appeal that Seals merely used the drop file to help her prepare for her HRO interview regarding Hurley's complaint, the jury could nevertheless reasonably reject their argument that the disclosure of the drop file's personal information to Seals for that purpose was "relevant and necessary in the ordinary course of the performance of [her] official duties" within the meaning of the IPA. (§ 1798.24, subd. (d).) Furthermore, as Hurley notes, Seals retained that supervisory drop file after her HRO interview and even after her retirement from DPR and subsequently gave it to her attorney in preparing her defense to the instant action. The jury could reasonably find that the prolonged continuation of DPR's disclosure of the drop file's information to Seals (i.e., by not requesting and procuring its return from Seals to DPR) and her disclosure of

26

that personal information to her attorney also constituted improper disclosures of personal information under the IPA.[10] (§ 1798.24, subd. (d).)

*Adverse effect.* Third, contrary to Defendants' assertion, there is substantial evidence to support a finding that Hurley suffered an adverse effect or adverse effects from their wrongful disclosures of her personal information in violation of the IPA.[11] It cannot reasonably be disputed that emotional distress is one type of adverse effect a

---

[10] To the extent DPR argues in its appellant's reply brief that it could not have improperly disclosed Hurley's personal information to Seals by her retention of the supervisory drop file because she was already familiar with that information and cites analogous federal cases in support of that argument (e.g., *Quinn v. Stone* (3d Cir. 1992) 978 F.2d 126, 134; *F.D.I.C. v. Dye* (5th Cir. 1981) 642 F.2d 833, 836), DPR did *not* raise that legal argument below or in its appellant's opening brief and therefore cannot belatedly raise that new legal argument in its reply brief. (*Julian v. Hartford Underwriters Ins. Co.* (2005) 35 Cal.4th 747, 761, fn. 4 ["We decline to advance an argument that the [appellants] neither timely nor fully made."]; *SCI California Funeral Services, Inc. v. Five Bridges Foundation* (2012) 203 Cal.App.4th 549, 573, fn.18 ["appellant cannot salvage a forfeited argument by belatedly addressing the argument in its reply brief"]; *In re Marriage of Khera & Sameer* (2012) 206 Cal.App.4th 1467, 1477 ["Obvious reasons of fairness militate against consideration of an issue raised initially in the reply brief of an appellant."]; *Shade Foods, Inc. v. Innovative Products Sales & Marketing, Inc.* (2000) 78 Cal.App.4th 847, 894, fn. 10 [points raised in reply brief for first time will not be considered unless good reason is shown for failure to raise them earlier]; *Jay v. Mahaffey* (2013) 218 Cal.App.4th 1522, 1542 [striking new issue raised in reply brief because "[t]here is absolutely no sound reason this issue could not have been raised in the . . . opening brief"].) DPR did not make any attempt in its appellant's reply brief to show it had a good reason for not raising that argument earlier and therefore it has waived or forfeited that argument which was made for the first time in its reply brief.

[11] Because we conclude there is substantial evidence to support findings that Hurley suffered adverse effects from Defendants' wrongful disclosures of her personal information, we need not, and do not, address the parties' arguments on whether there was also substantial evidence to support a finding that Hurley suffered adverse effects from DPR's failure to properly maintain its records containing her personal information in violation of the IPA. (§ 1798.21.)

27

plaintiff can suffer from a violation of the IPA. (§ 1798.45, subd. (c).) *Lachtman v. Regents of the University of California* (2007) 158 Cal.App.4th 187 (*Lachtman*), cited by DPR, is factually inapposite to this case and, in any event, does not hold otherwise.[12] Contrary to Defendants' assertion, there is substantial evidence to support a finding that Hurley suffered emotional distress as a result of both Seals's disclosure of her personal information to Rennie and DPR's disclosure to Seals of the supervisory drop file and her retention and disclosure of that file thereafter. Hurley testified that immediately after she witnessed Seals's disclosure of her personal information to Rennie, she became sick and threw up. Rennie also testified that after that incident Hurley appeared upset and left. Seals testified that after the Rennie incident Hurley left work early and went home sick. Hurley went on medical leave the following day (i.e., September 28, 2011) and never returned to work at OWD.[13] Hurley testified at trial that following the Rennie incident she was depressed and felt like she was being "unraveled piece by piece." She testified she was "very, very sad" and began seeing a therapist in October 2011. She testified she could not stop crying and could not get out of bed, shower, or perform other basic tasks.

---

12    Hurley correctly argues that because the plaintiff in *Lachtman* did not specifically allege any emotional distress damages from the alleged IPA violation, that case does not provide any authority for DPR's apparent assertion that emotional distress suffered from an IPA violation cannot be an "adverse effect" pursuant to section 1798.45, subdivision (c). (*Lachtman*, *supra*, 158 Cal.App.4th at pp. 211-212.) Furthermore, because Lachtman concluded the plaintiff did not prove any IPA violation, its discussion of the "adverse effect" requirement is dictum and does not provide any persuasive authority for DPR's argument. (*Id*. at p. 212.)

13    As noted above, Hurley remained on leave until August 2012, when she accepted an SSA position at DPR's Monterey location.

Accordingly, there is substantial evidence to support a finding that Hurley suffered emotional distress from Seals's disclosure of her personal information to Rennie.

There is also substantial evidence to support a finding that Hurley suffered emotional distress when she learned about DPR's disclosure of the supervisory drop file to Seals, her retention of that file, and her delivery of it to her attorney. Although Dolinar, on behalf of DPR, delivered the drop file to Seals in March or April 2012 while she (Seals) was on administrative leave, Hurley apparently did not learn of that disclosure of her personal information until Seals and her attorney delivered it to her (Hurley's) attorney in the course of discovery in the instant action, which delivery apparently occurred on April 29 or 30, 2013. Hurley then filed her first amended complaint on December 30, 2013, adding a cause of action against Defendants for violation of the IPA.

At trial, Hurley testified regarding the emotional distress she suffered when she learned that Seals, Seals's attorney, and potentially other persons had her personal information contained in the supervisory drop file. Hurley stated she was "really scared" about the fact that Seals had her personal information. In particular, Hurley stated Seals's possession of her personal information "makes me feel like I have to check all the time and be careful with my credit and with . . . any of my information because she has, like, . . . everything. So I feel like even in the future when this is all over, I'm still going to have to be checking because she still has my stuff." Although Hurley's testimony was relatively brief on this issue, it nevertheless provided substantial evidence for the jury to reasonably infer that she suffered emotional distress from the fact that persons (e.g., Seals) who should not have possession of her personal information did, in fact, have that

29

information.  Contrary to DPR's assertion, Hurley's testimony that she did not personally know what documents were included in the drop file or what Seals may have done with the file (other than disclosing it to her attorney) does not show Hurley did not suffer emotional distress when she learned about DPR's wrongful disclosure of the file's personal information.

*Statutes of limitations*.  Furthermore, we reject DPR's argument that the applicable statute of limitations bars any award of noneconomic damages against it.  Section 1798.49 generally provides:  "An action to enforce any liability created under Sections 1798.45 to 1798.48, inclusive, may be brought . . . within two years from the date on which the cause of action arises . . . ."  Because section 1798.45 imposes liability on DPR, as an agency, for disclosing Hurley's personal information in violation of the IPA, a two-year statute of limitations applies to her IPA cause of action against DPR. (§ 1798.49.)  Therefore, because Hurley filed her first amended complaint on December 30, 2013, adding the IPA cause of action against Defendants, her claim for damages, whether economic or noneconomic, generally must be limited to damages arising out of IPA violations occurring on or after December 30, 2011.  (§ 1798.49.)  Accordingly, Hurley's claim for damages for emotional distress that she suffered from DPR's IPA violations must be limited to those wrongful disclosures occurring on or after December 30, 2011.  Because Seals's disclosure of personal information to Rennie occurred in September 2011, Hurley's claim for emotional distress damages, and proof of an adverse effect under section 1798.45, subdivision (c), is limited to DPR's subsequent disclosure of the supervisory drop file to Seals in March or April 2012.  As we concluded above, there

30

is substantial evidence to support a finding that Hurley suffered emotional distress from DPR's disclosure of the drop file to Seals who, in turn, disclosed it to her attorney. Because DPR's disclosure to Seals of the drop file occurred within the two-year period before Hurley filed her first amended complaint on December 30, 2013, there is substantial evidence to support the jury's finding that Hurley suffered an adverse effect from that disclosure within the meaning of section 1798.45, subdivision (c). Accordingly, we affirm the jury's award of $19,200 against DPR for past noneconomic damages.[14]

We also reject Seals's argument that the applicable statute of limitations bars any award of noneconomic damages against her. Contrary to Seals's apparent assertion, the two-year statute of limitations set forth in section 1798.49 does not apply to her as an individual. As quoted above, that statute of limitations applies only to liability imposed under sections 1798.45 through 1798.48. (§ 1798.49.) However, those sections apply only to IPA actions against agencies. (See, e.g., § 1798.45 ["An individual may bring a civil action against an agency whenever such agency does any of the following . . . ."].) Hurley's IPA cause of action against Seals, as a nonagency individual, was necessarily brought pursuant to section 1798.53.[15] Seals does not cite, nor has our review of the IPA

---

[14]   DPR does not make any substantive legal argument showing that the *amount* of noneconomic damages awarded against it was incorrect or otherwise not supported by substantial evidence.

[15]   Section 1798.53 provides in part: "Any person, other than an employee of the state or of a local government agency acting solely in his or her official capacity, who intentionally discloses information, not otherwise public, which they know or should

found, any provision in the IPA that expressly sets forth a statute of limitations that applies to IPA causes of action filed against individuals pursuant to section 1798.53. Accordingly, Code of Civil Procedure section 338, subdivision (a), the default statute of limitations that generally applies to actions for personal injuries based on statutory violations, necessarily applies to Hurley's IPA cause of action against Seals. That statute sets forth a three-year statute of limitations for "[a]n action upon a liability created by statute . . . ." (Code Civ. Proc., § 338, subd. (a).) Because Hurley's IPA cause of action against Seals was necessarily based on her (Seals's) alleged liability under section 1798.53, that alleged liability was based on "a liability created by statute" and therefore a three-year statute of limitations applies to that cause of action. (Code Civ. Proc., § 338, subd. (a).)

Applying that three-year statute of limitations to the evidence of Hurley's emotional distress or other adverse effects that she suffered as a result of Seals's wrongful disclosure of her (Hurley's) personal information, we conclude Hurley's first amended complaint, filed on December 30, 2013, and adding the IPA cause of action against Seals, was timely filed as to Seals's wrongful disclosures occurring on or after December 30, 2010. Because both of Seals's wrongful disclosures discussed above (i.e., the Rennie disclosure in September 2011 and drop file disclosure to her attorney apparently in April 2013) occurred within that time period, the three-year statute of limitations that applies to

reasonably know was obtained from personal information maintained by a state agency . . . , shall be subject to a civil action, for invasion of privacy, by the individual to whom the information pertains."

32

Hurley's IPA cause of action against Seals did not bar any liability the jury imposed on her for emotional distress or other damages Hurley suffered as a result of the Rennie disclosure and/or Seals's disclosure of the supervisory drop file to her attorney. Because there is substantial evidence, as discussed *ante*, to support the jury's finding that Hurley suffered emotional distress and thus an adverse effect or effects, from either or both of those disclosures, we affirm the jury's award of $19,200 against Seals for past noneconomic damages.[16]

Although we concluded, *ante*, that there is substantial evidence to support a finding Hurley suffered an adverse effect in the form of emotional distress damages resulting from DPR's wrongful disclosure to Seals of her (Hurley's) personal information contained in the supervisory drop file, we nevertheless conclude there is insufficient evidence to support a finding Hurley suffered an adverse effect in the form of *economic* damages resulting from that disclosure. At trial, Hurley presented evidence of economic damages that she suffered as a result of the Rennie disclosure in September 2011, which claim for damages against DPR was, as discussed *ante*, barred by the section 1798.49 two-year statute of limitations. In particular, Hurley testified that at the time she went on leave (i.e., September 28, 2011) her gross salary was $3,841 per month. She further testified she was on leave without pay from that date through about August 2012, when she accepted a position at DPR's Monterey location. However, the record does not

---

[16]     Seals does not make any substantive legal argument showing that the *amount* of noneconomic damages awarded against her was incorrect or otherwise not supported by substantial evidence.

contain any evidence showing Hurley suffered any economic damages following her discovery on April 29 or 30, 2013, that DPR had disclosed to Seals the supervisory drop file when Seals was on administrative leave. The jury's award of $19,200 in economic damages closely correlates with Hurley's evidence showing she lost wages of $3,841 per month, presumably during the five-month period while she was on leave until Seals herself went on leave and was no longer her supervisor (i.e., from October 2011 through February 2012). Because five months of lost wages of $3,840 per month totals economic damages of $19,200, we presume the jury calculated Hurley's economic damages based on that five-month period of lost wages. However, those economic damages were based on Defendants' September 2011 wrongful disclosure to Rennie of Hurley's personal information, which disclosure, as discussed *ante*, preceded the two-year statute of limitations period applicable to DPR pursuant to section 1798.49. Therefore, any adverse effect resulting from that wrongful disclosure cannot provide the basis for an award of economic damages against DPR. Because Hurley did not present substantial evidence showing she suffered any economic damages as a result of her discovery in April 2013 of DPR's wrongful disclosure to Seals of the supervisory drop file or as a result of any other post-December 30, 2011, wrongful disclosure, we conclude there is insufficient evidence to support the jury's award of $19,200 in economic damages against DPR. Accordingly, that part of the judgment must be stricken.[17]

---

[17] Because Seals does not, and could not persuasively, argue the jury's award of $19,200 in economic damages against her is barred by the statute of limitations

*Section 47, Subdivision (b), Litigation Privilege*

Defendants also contend the trial court erred by denying their JNOV motions because the litigation privilege under section 47, subdivision (b), barred Hurley's IPA cause of action against them. In particular, they argue Hurley's IPA cause of action was based solely on DPR's disclosure of the supervisory drop file to Seals in March or April 2012 and her retention of that file and disclosure of it to her attorney thereafter, which disclosures Hurley discovered in April 2013. However, because Seals's liability as an individual defendant is supported by substantial evidence that she wrongfully disclosed Hurley's personal information to Rennie on or about September 27, 2011, the IPA verdict against Seals can be affirmed based on that disclosure alone and therefore we need not address whether she (Seals) can assert the litigation privilege against the IPA cause of action based on Hurley's discovery in April 2013 that DPR wrongfully disclosed to Seals the supervisory drop file and Seals wrongfully retained that file and disclosed it to her attorney thereafter. In any event, because DPR's IPA liability can, as discussed *ante*, be affirmed solely on its disclosure to Seals of the supervisory drop file, we nevertheless address the merits of the contention that Defendants' disclosures of that drop file were protected by the litigation privilege under section 47, subdivision (b).

---

applicable to Hurley's IPA claim against her, we affirm that award of economic damages against Seals.

A

The litigation privilege under section 47, subdivision (b), provides an affirmative defense to defendants for liability based on certain communications made in legislative, judicial, or other official proceedings authorized by law. "[T]he privilege applies to any communication (1) made in judicial or quasi-judicial proceedings; (2) by litigants or other participants authorized by law; (3) to achieve the objects of the litigation; and (4) that have some connection or logical relation to the action." (*Silberg v. Anderson* (1990) 50 Cal.3d 205, 212.) In particular, the litigation privilege may apply to bar privacy causes of action based on common law, a statute, or a constitutional right. (*Jacob B. v. County of Shasta* (2007) 40 Cal.4th 948, 962 (*Jacob B.*).)

However, the litigation privilege "protects only against *communicative* acts and not against *noncommunicative* acts. [Citation.]" (*Jacob B.*, *supra*, 40 Cal.4th at p. 956.) Alternatively stated, the privilege applies only to communicative acts and does not protect tortious courses of conduct. (*Olszewski v. Scripps Health* (2003) 30 Cal.4th 798, 830.) "Because the litigation privilege protects only publications and communications, a 'threshold issue in determining the applicability' of the privilege is whether the defendant's conduct was communicative or noncommunicative." (*Rusheen v. Cohen* (2006) 37 Cal.4th 1048, 1058 (*Rusheen*).) For example, the litigation privilege has been applied to the filing of false declarations of service to obtain a default judgment. (*Id*. at p. 1052.) "[T]he key in determining whether the privilege applies is whether the injury allegedly resulted from an act that was communicative in its essential nature." (*Id*. at p. 1058.) Furthermore, "if the gravamen of the action is communicative, the litigation

36

privilege extends to noncommunicative acts that are necessarily related to the communicative conduct . . . . Stated another way, unless it is demonstrated that an independent, noncommunicative, wrongful act was the gravamen of the action, the litigation privilege applies." (*Id*. at p. 1065.) "The following acts have been deemed noncommunicative and thus unprivileged: prelitigation illegal recording of confidential telephone conversations [citation]; eavesdropping on a telephone conversation [citation]; and physician's negligent examination of patient causing physical injury [citation]." (*Id*. at p. 1058.)

B

Defendants repeatedly asserted below the affirmative defense of the litigation privilege to Hurley's IPA cause of action, but the trial court rejected its applicability to the circumstances in this case. Because the gravamen of Hurley's IPA cause of action was Defendants' *noncommunicative* act or acts of disclosure or transfer of her personal information in violation of the IPA, we conclude the litigation privilege does *not* apply to preclude their liability under the IPA. In particular, DPR's noncommunicative conduct of transferring the supervisory drop file to Seals resulted in Hurley's injury under the IPA. Likewise, Seals's subsequent noncommunicative conduct of transferring the drop file to her attorney also resulted in injury to Hurley under the IPA. Contrary to Defendants' assertion, their wrongful conduct was not communicative in its essential nature. (*Rusheen*, *supra*, 37 Cal.4th at p. 1058.) Defendants' transfers of the supervisory drop file to unauthorized persons in violation of the IPA is similar to other acts that have been deemed noncommunicative and thus unprivileged, such as prelitigation illegal recording

37

of confidential telephone conversations and eavesdropping on a telephone conversation. (*Ibid.*)

In *Kimmel v. Goland* (1990) 51 Cal.3d 202 (*Kimmel*), the court concluded the noncommunicative acts of illegal recording of confidential telephone conversations were not privileged under former section 47, subdivision (2), which was the predecessor to section 47, subdivision (b). (*Kimmel*, at p. 205.) That tortious conduct was not privileged even though it was done for the purpose of gathering evidence for future litigation. (*Ibid.*) *Kimmel* stated: "[P]ark management seeks statutory damages under Penal Code section 637.2 not for injuries arising from the broadcast and publication of private conversations, but from the recording of them. Moreover, since park management's right to a statutory remedy accrued at the moment of the violation, plaintiffs' contention that the telephone conversations were made in anticipation of litigation is simply irrelevant." (*Kimmel*, at p. 212.) As support for its conclusion, *Kimmel* discussed an analogous hypothetical situation in which a prospective plaintiff engaged in prelitigation criminal conduct, stating:

> "Suppose, a prospective defendant kept important documents at home. If a prospective plaintiff, in anticipation of litigation, burglarized defendant's premises in order to obtain evidence, plaintiffs here would apparently apply the privilege to protect the criminal conduct. Such an extension of [former] section 47(2) is untenable." (*Kimmel, supra*, 51 Cal.3d at p. 212.)

Accordingly, *Kimmel* rejected the plaintiffs' argument that the litigation privilege protected them from liability for their prelitigation, noncommunicative conduct in violation of a statute. (*Kimmel, supra*, 51 Cal.3d at pp. 205, 212.)

38

We believe the conduct in this case is more similar to the nonprivileged, noncommunicative conduct in *Kimmel* than the privileged communications or publications in the cases cited by Defendants (e.g., *Rusheen*, *supra*, 37 Cal.4th 1048; *Jacob B.*, *supra*, 40 Cal.4th 948). As discussed *ante*, the gravamen of Hurley's IPA cause of action is Defendants' violation of the IPA by transferring or disclosing her personal information, which conduct is noncommunicative in its essential nature. (*Rusheen*, at p. 1058.) As in *Kimmel*, Hurley's "right to a statutory remedy accrued at the moment of [Defendants' statutory] violation" when they transferred her personal information to an unauthorized person or persons, and Defendants' assertion that such noncommunicative conduct was done in the course of the HRO investigation or in anticipation of litigation (i.e., Hurley's future lawsuit) is irrelevant. (*Kimmel*, *supra*, 51 Cal.3d at p. 212; cf. *Susan S. v. Israels* (1997) 55 Cal.App.4th 1290, 1301 ["[T]he litigation privilege does not shield defendants from liability for reading and disseminating Susan S.'s private mental health records for the purpose of gathering evidence to be used in the course of a criminal proceeding."].) Accordingly, we conclude the section 47, subdivision (b), litigation privilege does not apply to protect Defendants from liability for their violations of the IPA in this case.

IV

*Seals's IPA Liability Under Section 1798.53*

Seals contends that the trial court erred by denying her JNOV motion because Hurley's IPA cause of action against her was alleged under, and the jury was instructed on, a statute (i.e., § 1798.45) that was inapplicable to her. She argues that because she

39

could be found liable as an individual only under section 1798.53 and the jury was instructed only on liability under section 1798.45, the IPA verdict against her must be reversed.

A

Hurley's first amended complaint, which added the IPA cause of action against Defendants, alleged violations of the IPA, but did not cite the specific statutes imposing liability on DPR as an agency (§ 1798.45) or Seals as an individual (§ 1798.53). However, Hurley proposed separate jury instructions for DPR's alleged IPA liability as an agency and Seals's alleged IPA liability as an individual, specifically citing as authority the applicable statutes imposing their alleged respective liability (i.e., §§ 1798.45 & 1798.53). DPR presented its own proposed instruction on the IPA cause of action. In discussing those proposed instructions at the beginning of the trial, the trial court and the parties' counsel specifically discussed the different bases for liability of an agency (§ 1798.45) and an individual under the IPA (§ 1798.53). Following a recess, the parties' counsel informed the court that they had agreed on instructions for the IPA cause of action.

On conclusion of the trial, the court then instructed the jury on the IPA cause of action, paraphrasing section 1798.45 and stating in pertinent part:

> "Ms. Hurley claims that [DPR] and/or Ms. Seals violated the [IPA] by disclosing records that contain her personal information. To establish this claim against [DPR] and Ms. Seals, Ms. Hurley must prove[:]

40

"One, that [DPR] and/or Ms. Seals disclosed records containing personal information about Ms. Hurley in a manner that would link the information disclosed to Ms. Hurley.

"Two, that the disclosure was not relevant and necessary in the ordinary course of the performance of [DPR's] and/or Ms. Seals'[s] official duties and was not related to the purpose for which the information was acquired.

"And three, that as a result, Ms. Hurley suffered an adverse effect. . . ."

Seals's counsel did not object to that instruction or request any additional or clarifying instructions.

B

Contrary to Seals's assertion, Hurley did not mistakenly allege a cause of action against her as an agency under section 1798.45 rather than as an individual under section 1798.53. The first amended complaint did not specify the particular statute of the IPA under which Hurley sought to impose liability on Seals. Furthermore, at the beginning of the trial, Hurley proposed instructions that expressly sought to impose liability on Seals as an individual under section 1798.53.[18] Nevertheless, based on the agreement of all parties' counsel, the trial court instructed the jury on Hurley's IPA cause of action against Defendants using language from section 1798.45 and not section 1798.53. To the extent

_____

18  As quoted above, section 1798.53 provides in part: "Any person, other than an employee of the state or of a local government agency acting solely in his or her official capacity, who intentionally discloses information, not otherwise public, which they know or should reasonably know was obtained from personal information maintained by a state agency . . . shall be subject to a civil action, for invasion of privacy, by the individual to whom the information pertains."

41

Seals argues the court erred by so doing and/or that Hurley, in effect, forfeited any claim against her based on section 1798.53, Seals waived or forfeited, and apparently even invited, any such error by the court or forfeiture by Hurley because Seals implicitly, if not expressly, agreed to that instruction and did not timely object to the instruction given by the court or request clarifying language regarding Hurley's IPA claim against her as an individual. (*Metcalf v. County of San Joaquin* (2008) 42 Cal.4th 1121, 1130 (*Metcalf*) ["[B]y requesting the instructions the court gave and not requesting any additional instructions, plaintiff has forfeited the right to argue on appeal that the court misinstructed the jury."]; *Conservatorship of Gregory* (2000) 80 Cal.App.4th 514, 520 (*Gregory*) [where court gives instruction correct in law, but appellant complains it is too general, lacks clarity, or is incomplete, appellant must request additional or qualifying instruction to raise issue on appeal]; *Electronic Equipment Express, Inc. v. Donald H. Seiler & Co.* (1981) 122 Cal.App.3d 834, 856-857 (*Donald H. Seiler & Co.*) [by acquiescing to erroneous instruction, appellant waived that error on appeal]; *Mary M. v. City of Los Angeles* (1991) 54 Cal.3d 202, 212 (*Mary M.*) ["Under the doctrine of invited error, when a party by its own conduct induces the commission of error, it may not claim on appeal that the judgment should be reversed because of that error."]; *Scott v. C.R. Bard, Inc.* (2014) 231 Cal.App.4th 763, 787 (*Scott*) [defendants were estopped from asserting instructional error on appeal because they acquiesced to that instruction below].) "A civil litigant must propose complete instructions in accordance with his or her theory of the litigation and a trial court is not 'obligated to seek out theories [a party] might have advanced, or to articulate for him that which he has left unspoken.'

[Citation.]" (*Mesecher v. County of San Diego* (1992) 9 Cal.App.4th 1677, 1686 (*Mesecher*).) "[A] party may not argue on appeal that the court failed to give a specific instruction when that party did not request such instruction [citations]." (*Hilts v. County of Solano* (1968) 265 Cal.App.2d 161, 171 (*Hilts*).)

We apply the principles, *ante*, to estop or bar Seals from challenging on appeal the instructions given by the trial court that resulted in the jury's finding that she was liable to Hurley on the IPA cause of action. Because Seals presumably adopted a deliberate trial strategy by not objecting to the incomplete or inapplicable instructions and not requesting additional or clarifying instructions on the IPA claim against her, Seals may not now on appeal use that tactical decision to claim prejudicial error and obtain reversal of the jury's verdict on the IPA cause of action against her. (Cf. *Mesecher*, *supra*, 9 Cal.App.4th at p. 1686.) Accordingly, although we presume the trial court erroneously instructed on Seals's alleged liability under the IPA by giving an instruction only on section 1798.45 and not on section 1798.53, we nevertheless conclude Seals cannot raise that error on appeal, nor can she raise the issue of whether, based on the instructions given, Hurley mistakenly sought liability against her under section 1798.45 rather than under section 1798.53.

Based on the same reasoning, *ante*, we further conclude Seals cannot raise her alternative argument that there is insufficient evidence that would have supported a finding by the jury that she was liable under section 1798.53. Although section 1798.53 liability requires a finding that Seals "intentionally" disclosed personal information in violation of the IPA, the jury was not instructed on that requirement because of her

43

failure to request additional or clarifying instructions setting forth that and other requirements under section 1978.53. Accordingly, Seals has waived or forfeited her contention on appeal that there is insufficient evidence to support a verdict finding her liable under section 1978.53 with its specific elements. (*Metcalf*, *supra*, 42 Cal.4th at p. 1130; *Gregory*, *supra*, 80 Cal.App.4th at p. 520; *Donald H. Seiler & Co.*, *supra*, 122 Cal.App.3d at pp. 856-857; *Mary M.*, *supra*, 54 Cal.3d at p. 212; *Scott*, *supra*, 231 Cal.App.4th at p. 787; cf. *Mesecher*, *supra*, 9 Cal.App.4th at p. 1686; *Greer v. Buzgheia* (2006) 141 Cal.App.4th 1150, 1158 [defendant forfeited challenge to damages award by not requesting special verdict form segregating damages].)

V

*Substantial Evidence to Support IIED and NIED Verdicts Against Seals*

Seals contends the trial court erred by denying her JNOV motion because there is insufficient evidence to support the jury's verdicts finding her liable on the IIED and NIED causes of action. In particular, she argues there is insufficient evidence that she engaged in any extreme and outrageous conduct that would support her IIED liability.

A

The trial court instructed the jury with CACI No. 1600 on the IIED cause of action, stating:

> "[Hurley] claims that [Seals's] conduct caused her to suffer severe emotional distress. To establish this claim, [Hurley] must prove all of the following:
>
> "1. That [Seals's] conduct was outrageous;

44

"2. [Seals] intended to cause [Hurley] emotional distress; or [¶] [t]hat [Seals] acted with reckless disregard of the probability that [Hurley] would suffer emotional distress, knowing that [Hurley] was present when the conduct occurred;

"3. That [Hurley] suffered severe emotional distress; and

"4. That [Seals's] conduct was a substantial factor in causing [Hurley's] severe emotional distress."

The court also instructed with CACI No. 1602 on the definition of "outrageous conduct," stating in pertinent part: " 'Outrageous conduct' is conduct so extreme that it goes beyond all possible bounds of decency. Conduct is outrageous if a reasonable person would regard the conduct as intolerable in a civilized community. Outrageous conduct does not include trivialities such as indignities, annoyances, hurt feelings, or bad manners that a reasonable person is expected to endure. . . ." The court also instructed with CACI No. 1603 on reckless disregard and CACI No. 1604 on severe emotional distress. The court also instructed with CACI Nos. 1620 and 401 on the NIED cause of action. The jury returned verdicts finding Seals liable on the IIED and NIED causes of action.

B

We conclude there is substantial evidence to support the jury's verdicts finding Seals liable on the IIED and NIED causes of action. In particular, as discussed *ante*, there is evidence showing Hurley was outside of Seals's office when Seals discussed with Rennie, a nonsupervisory DPR employee with a lesser rank than Hurley, information that Hurley had failed her probation at a prior job. Immediately after witnessing that conversation, Hurley became ill, threw up, and left work for the remainder of the day, and she went on medical leave the following day. In addition, there was trial testimony

45

that while at a Sacramento hotel on a DPR business trip, Seals "flashed" her breasts in the presence of Hurley and others. Hurley also testified that when she told Seals that she would be adding her domestic partner as a beneficiary of her health insurance, Seals replied: "So, you really like boobs better?" Hurley also testified about other comments Seals made about her (Hurley's) sexual orientation and style of hair and clothing.

Contrary to Seals's assertion, evidence of her receipt and retention of the supervisory drop file and subsequent transfer of that file to her attorney was not the "only" evidence in support of the jury's finding that Hurley suffered emotional distress. As summarized *ante*, Hurley witnessed Seals discussing with Rennie her personal information (i.e., Hurley's failure of probation at a prior job), witnessed Seals flashing her breasts, and was subjected to Seals's many comments about her sexual orientation and appearance. The jury could reasonably find that that evidence of Seals's conduct was outrageous conduct so as to support a finding against Seals on the IIED cause of action. Although Seals does not expressly address the sufficiency of the evidence to support the jury's verdict on the NIED cause of action, we likewise conclude the jury could reasonably find that the evidence, *ante*, of Seals's conduct was also sufficient to support a finding against Seals on the NIED cause of action (i.e., that Seals was negligent in causing Hurley serious emotional distress). Because there is substantial evidence to support the IIED and NIED verdicts against Seals, the trial court did not err by denying Seals's JNOV motion on the ground of insufficiency of the evidence.

To the extent Seals also argues the jury's verdicts improperly allowed Hurley to receive a double recovery for her emotional distress damages, the record does not support

46

that argument. The jury was given only one verdict form asking it to calculate Hurley's past noneconomic damages, which form was not specific to a particular cause of action. The jury awarded Hurley a single amount of $19,200 for her past noneconomic damages (e.g., emotional distress damages). Therefore, contrary to Seals's assertion, Hurley was *not* awarded double damages for the emotional distress she suffered based on her IPA, IIED, and/or NIED causes of action.

## VI

### *Workers' Compensation Exclusivity Doctrine*

Seals contends the trial court erred by denying her JNOV motion because the workers' compensation exclusivity doctrine necessarily applied to bar the IIED and NIED causes of action against her.

### A

Labor Code section 3602, subdivision (a),[19] generally provides that employees may seek compensation for job-related injuries against their employers only through the workers' compensation system. In the context of emotional distress injuries, the California Supreme Court has held: "So long as the basic conditions of compensation are otherwise satisfied (Lab. Code, § 3600), and the employer's conduct neither contravenes fundamental public policy [citation] nor exceeds the risks inherent in the employment

---

[19] Labor Code section 3602, subdivision (a), provides: "Where the conditions of compensation set forth in Section 3600 concur, the right to recover compensation is . . . the sole and exclusive remedy of the employee or his or her dependents against the employer. . . ."

47

relationship [citation], an employee's emotional distress injuries are subsumed under the exclusive remedy provisions of workers' compensation." (*Livitsanos v. Superior Court* (1992) 2 Cal.4th 744, 754 (*Livitsanos*).) Therefore, if a plaintiff's emotional distress injuries occurred "at the worksite, in the normal course of the employer-employee relationship," the workers' compensation exclusivity doctrine will apply to bar an independent action for intentional and/or negligent infliction of emotional distress. (*Miklosy v. Regents of University of California* (2008) 44 Cal.4th 876, 902 (*Miklosy*).) For example, demotions and criticism of an employee's work practices that cause emotional injury are considered to be within the workers' compensation bargain. (*Singh v. Southland Stone, U.S.A., Inc.* (2010) 186 Cal.App.4th 338, 367.)

Exceptions to application of the workers' compensation exclusivity doctrine exist where the conduct contravenes fundamental public policy or the conduct exceeds the risks inherent in the employment relationship. (*Livitsanos*, *supra*, 2 Cal.4th at p. 754.) Alternatively stated, that doctrine does not apply where the employer "stepped out of [its] proper role[]." (*Cole v. Fair Oaks Fire Protection Dist.* (1987) 43 Cal.3d 148, 161.) In particular, that doctrine does not apply to bar an employee's action for invasion of the constitutional right to privacy or for false imprisonment. (*Operating Engineers Local 3 v. Johnson* (2003) 110 Cal.App.4th 180, 191 (*Johnson*); *Fermino v. Fedco, Inc.* (1994) 7 Cal.4th 701, 723, fn. 7.)

B

The trial court instructed with CACI No. 2810 on Seals's affirmative defense of workers' compensation exclusivity to the IIED and NIED causes of action. In particular, the court instructed:

"To succeed on this defense, [Seals] must prove all of the following:

"1. That the harm sustained by [Hurley] arose from the normal part of the employment relationship between [Hurley] and [DPR];

"2. That [DPR] had workers' compensation [insurance] covering [Hurley] at the time of the harm or was self-insured for workers' compensation at the time of [Hurley's] harm; and

"3. That [Seals] was acting in the scope of her employment at the time [Hurley] claims she was harmed."

By finding Seals liable under the IIED and NIED causes of action, the jury necessarily found that the workers' compensation exclusivity doctrine did not apply and, in particular, that Hurley's emotional distress damages did not arise from the normal part of her employment relationship.

C

Contrary to Seals's apparent assertion, we conclude there is substantial evidence to support the jury's finding that the workers' compensation exclusivity doctrine did not apply to bar Hurley's IIED and NIED causes of action against her. The jury could reasonably find that Seals's initial receipt, retention, and subsequent delivery to her attorney of the supervisory drop file containing Hurley's personal information while she (Seals) was on administrative leave and medical leave and after her retirement exceeded the risks inherent in Hurley's employment relationship and did not occur at the workplace

49

in the normal course of the employer-employee relationship. (*Livitsanos*, *supra*, 2 Cal.4th at p. 754; *Miklosy*, *supra*, 44 Cal.4th at p. 902.) Seals's conduct violated the IPA and did not occur either at the workplace or while she was acting as Hurley's supervisor or otherwise within the scope of her (Seals's) employment. Furthermore, Seals's conduct was contrary to the IPA's fundamental public policy against improper disclosures of personal information maintained by agencies. (§ 1798.1 ["the right to privacy is a personal and fundamental right"]; cf. *Johnson*, *supra*, 110 Cal.App.4th at p. 191 [workers' compensation exclusivity doctrine did not bar action for violation of employee's constitutional right to privacy]; *Livitsanos*, at p. 754 [recognizing fundamental public policy exception to workers' compensation exclusivity doctrine].) Therefore, contrary to Seals's assertion, the jury could reasonably find that the emotional distress that Hurley suffered on discovery that Seals had possession of the supervisory drop file containing her personal information and had delivered it to her attorney (and possibly others) was not a normal part of Hurley's employment relationship for which the workers' compensation exclusivity doctrine applied.[20] Accordingly, the trial court did not err by denying Seals's JNOV motion on the grounds of the workers' compensation exclusivity doctrine.

---

[20]    Although Seals's conduct regarding the supervisory drop file was sufficient, in itself, to support the IIED and NIED verdicts against her, there was also other conduct (e.g., Seals's flashing her breasts to Hurley and others at a hotel) that was not a normal part of Hurley's employment and not protected by the workers' compensation exclusivity doctrine and therefore could provide additional support for the jury's verdicts on the IIED and NIED causes of action.

## VII

### *Punitive Damages Award Against Seals*

Seals contends the trial court erred by denying her JNOV motion because it erred in instructing the jury on punitive damages and there was insufficient evidence to support an award of punitive damages against her. In particular, she argues the court failed to instruct that Hurley had the burden to show by "clear and convincing evidence" that she acted with oppression, fraud, or malice, which showing is required for an award of punitive damages.

### A

Section 3294, subdivision (a), provides: "In an action for the breach of an obligation not arising from contract, where it is *proven by clear and convincing evidence* that the defendant has been guilty of oppression, fraud, or malice, the plaintiff, in addition to the actual damages, may recover damages for the sake of example and by way of punishing the defendant." (Italics added.) "Malice" is defined as "conduct which is intended by the defendant to cause injury to the plaintiff or despicable conduct which is carried on by the defendant with a willful and conscious disregard of the rights or safety of others." (§ 3294, subd. (c)(1).) "Oppression" is defined as "despicable conduct that subjects a person to cruel and unjust hardship in conscious disregard of that person's rights." (*Id*., subd. (c)(2).) "Despicable conduct" has been described as conduct that is "so vile, base, contemptible, miserable, wretched or loathsome that it would be looked down upon and despised by ordinary decent people." (*Lackner v. North* (2006) 135 Cal.App.4th 1188, 1210.)

51

B

Contrary to Seals's apparent assertion, the trial court did, in fact, instruct on the requirement that Hurley prove, by clear and convincing evidence, that she (Seals) acted with oppression, fraud, or malice. The court instructed with CACI No. 3941, stating:

> "If you decide that [Seals's] conduct toward [Hurley] caused [Hurley] harm, you must decide whether that conduct justifies an award of punitive damages. At this time, you must decide whether [Hurley] has *proved by clear and convincing evidence* that [Seals] engaged in conduct towards [Hurley] with malice, oppression, or fraud. The amount of punitive damages, if any, will be decided later. . . ." (Italics added.)

By returning its verdict finding that Seals acted with oppression, fraud, or malice, the jury necessarily found Hurley had proved by clear and convincing evidence that Seals acted with oppression, fraud, or malice. *Westrec Marina Management, Inc. v. Jardine Ins. Brokers Orange County, Inc.* (2000) 85 Cal.App.4th 1042, cited by Seals, is factually and procedurally inapposite to this case and does not persuade us to reach a contrary conclusion. In that case, the plaintiff did not request an instruction, and the trial court did not instruct, on the requirement that the jury find that the defendant's oppression, fraud, or malice was proved by clear and convincing evidence. (*Id.* at p. 1050.)

To the extent Seals argues the jury should also have been instructed with CACI No. 201[21] on the clear and convincing evidence standard, she waived or forfeited that

---

[21]    CACI No. 201 states: "Certain facts must be proved by clear and convincing evidence, which is a higher burden of proof. This means the party must persuade you that it is highly probable that the fact is true. I will tell you specifically which facts must be proved by clear and convincing evidence."

argument by not requesting that additional or clarifying instruction below. (*Gregory*, *supra*, 80 Cal.App.4th at p. 520 [where court gives instruction correct in law, but appellant complains it is too general, lacks clarity, or is incomplete, appellant must request additional or qualifying instruction to raise issue on appeal]; *Donald H. Seiler & Co.*, *supra*, 122 Cal.App.3d at pp. 856-857 [by acquiescing to erroneous instruction, appellant waived that error on appeal]; *Scott*, *supra*, 231 Cal.App.4th at p. 787 [defendants were estopped from asserting instructional error on appeal because they acquiesced to that instruction below].) "[A] party may not argue on appeal that the court failed to give a specific instruction when that party did not request such instruction [citations]." (*Hilts*, *supra*, 265 Cal.App.2d at p. 171.)

To the extent Seals argues there is insufficient evidence to support the jury's finding that Hurley proved, by clear and convincing evidence, that she (Seals) acted with oppression, fraud, or malice, she has waived or forfeited that argument by not presenting any substantive legal analysis of the relevant evidence on that issue in her opening brief.[22] (*Ham*, *supra*, 7 Cal.App.3d at p. 783; *Jones*, *supra*, 26 Cal.App.4th at p. 99; *Landry v. Berryessa Union School Dist.* (1995) 39 Cal.App.4th 691, 699-700; *Ochoa v.*

---

[22] Although Seals appears to argue, in a conclusory manner, that there is insufficient evidence to support the award of punitive damages because the jury's verdicts finding her liable on the IPA, IIED, and NIED causes of action must be reversed based on insufficiency of the evidence and other grounds as she argued above, we rejected those arguments above and therefore those verdicts are affirmed and cannot support her argument for reversal of the award of punitive damages.

*Pacific Gas & Electric Co.* (1998) 61 Cal.App.4th 1480, 1488, fn. 3.) Therefore, we need not, and do not, discuss the merits of that argument.

DISPOSITION

The award of $19,200 in economic damages against DPR is reversed and the judgment is modified to omit that award. As so modified, the judgment is affirmed. Plaintiff and appellant Hurley shall be awarded her costs on appeal.


McCONNELL, P. J.

WE CONCUR:


BENKE, J.


IRION, J.

54