Filed 12/17/13

CERTIFIED FOR PARTIAL PUBLICATION[*]

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | E054638 |
| v. | (Super.Ct.No. SWF10000375) |
| GARY WICKHAM, | OPINION |
| Defendant and Appellant. | |

APPEAL from the Superior Court of Riverside County.  Albert J. Wojcik, Judge.

Affirmed.

David L. Annicchiarico, under appointment by the Court of Appeal, for Defendant

and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney

General, Julie L. Garland, Assistant Attorney General, Lilia E. Garcia, Peter Quon, Jr.,

and Linh Lam, Deputy Attorneys General, for Plaintiff and Respondent.

---

[*] Pursuant to California Rules of Court, rules 8.1105(b) and 8.1110, this opinion is
certified for publication with the exception of parts 1, 2, and 3.

Defendant challenges the more than $133,000 the trial court ordered him to pay to his elderly victim after defendant pled guilty to one count of theft by false pretenses (Pen. Code, § 532, subd. (a))[1] in exchange for a sixteen-month prison sentence. Defendant contends the court abused its discretion when it: 1) failed to state on the record the factual basis for and calculation of the restitution amount; 2) overstated the amount the victim lent to defendant; 3) understated the amount defendant repaid to the victim; and 4) allowed the victim to recover interest on loans that violate California usury laws. As discussed below, we reject each of these arguments and affirm the restitution order.

### FACTS AND PROCEDURE

Defendant met the elderly[2] victim, Mr. Griffin, through a mutual acquaintance in early 2007. Thereafter began a series of transactions in which Mr. Griffin would lend defendant money for various schemes. Defendant repaid some of the money, but not all, and did not keep accurate records. Mr. Griffin testified at the restitution hearing that he would return a promissory note to defendant when defendant repaid it. Mr. Griffin provided copies of eight unpaid promissory notes, along with bank records of checks written to him by defendant that were received, dishonored, and, according to Mr. Griffin, contained his forged endorsement. Defendant also testified and produced copies of cancelled checks purporting to show amounts he repaid to Mr. Griffin. From this

---

[1] All section references are to the Penal Code unless otherwise indicated.

[2] An investigator from the Riverside County Sheriff's Department testified that when he spoke with Mr. Griffin in early 2010, Mr. Griffin was in his early 90s.

2

testimony and these records, the trial court ultimately determined the restitution award that defendant challenges.

In January 2007, Mr. Griffin lent defendant $6,250 "to buy a gold deal out of Mexico." Mr. Griffin lent defendant another $6,250 for the same purpose in November of that year. Both loans were secured by promissory notes stating an interest rate of 12.9 percent. According to Mr. Griffin's testimony neither note was ever repaid.

In January of 2008, defendant and Mr. Griffin executed a promissory note for $7,100, at 15 percent interest. According to Mr. Griffin, this note was to replace a previous promissory note for a lesser amount, which defendant either tore up or took with him, plus an additional amount of cash that defendant wanted. Mr. Griffin testified that defendant never repaid that note.

In October of 2008, defendant executed a promissory note for $56,000 at zero percent interest. Mr. Griffin testified that the note included $6,000 in interest up front because he had to obtain the money as a cash advance from his credit cards. Defendant was supposed to pay $4,000 per month on this note, but he did not repay any part of the $56,000.

In November of 2008, defendant executed a promissory note for $21,000 at zero percent interest. Defendant was supposed to make monthly payments of $1,500, but he failed to do so.

In December of 2008, defendant executed a promissory note for $4,000. Mr. Griffin testified that he did not charge defendant any interest on this note because it was to be paid back the following month. Mr. Griffin testified that "Sometimes I let him have

3

money like that if he was gonna pay it back in one month." Defendant gave Mr. Griffin a check for $10,000 to repay this note and "[t]o pay off on some of his bills," but that check bounced. It appears from Mr. Griffin's testimony that this bounced check prompted him to contact authorities.

In April of 2009, defendant executed the last two unpaid promissory notes on the same day, each for $10,600. One stated an interest rate of 12.9 percent, the other 12.8 percent. One of the notes listed as security three vehicles owned by defendant. Defendant defaulted on the note, but did not give Mr. Griffin the vehicles. Mr. Griffin obtained the vehicles after defendant was arrested.

Mr. Griffin testified that he received various checks from defendant, many of which were dishonored by the bank or contained Mr. Griffin's forged signature endorsing the check.

During his testimony, Mr. Griffin stated regarding his financial situation after his dealings with defendant, "I don't got no money now. I got all this money on credit cards, and I been trying to pay them. But I ain't missed a payment, though."

Mr. Griffin contacted police sometime in 2009. The sheriff's department investigator testified that, after he interviewed Mr. Griffin in February of 2010 and obtained copies of the eight promissory notes and some checks Mr. Griffin had written to defendant, he contacted defendant to go over the accusations. Defendant cancelled scheduled meetings at least twice, and the two never met in person. Defendant wrote up a new promissory note for $156,000 at 12 percent interest, and attempted to get Mr. Griffin to sign it. Acting on the investigator's advice, Mr. Griffin declined. The

4

unsigned promissory note was entered into evidence.  Defendant admitted during his testimony that he drafted the $156,000 note in an attempt to "keep this a civil matter and not get the police involved."  He testified that he relied on Mr. Griffin's estimate of what defendant owed him to come up with that amount.

On February 25, 2010, the People filed a felony complaint alleging defendant in count 1 committed theft and embezzlement from an elder or dependent adult (Pen. Code, § 368, subd. (d)) and in count 2 obtained money by false pretenses (§ 532, subd.(a)).  As to both counts, the People alleged defendant took property exceeding $65,000 (§ 12022.6, subd. (a)(1).)  As to count 2, the People alleged defendant committed a pattern of two or more theft- or fraud-related felonies resulting in a loss of more than $100,000 (§ 186.11, subd. (a)(1).)  The People further alleged that defendant had one prior "strike" conviction for bank robbery.  (§§ 667, subds. (c) & (e)(1); 1170.12, subd. (c)(1).)

On June 18, 2010, defendant pled guilty to count 2.  The court sentenced defendant to the agreed low-term sentence of 16 months, with credit for 232 days.

The hearing on restitution to Mr. Griffin was held on March 4 and August 12, 2011.  On September 28, 2011, the court ordered defendant to pay Mr. Griffin victim restitution in the amount of $133,848.47,[3] plus 10 percent interest per year beginning on that date.  This appeal followed.

---

[3] The record transcript for September 28, 2011, shows the court ordered victim restitution in the amount of $133,848.47.  The minute order for that date shows the restitution amount as $133,484.47.  As a general rule, when the record of the court's oral pronouncement regarding sentencing conflicts with the clerk's minute order, the oral pronouncement controls.  (*People v. Farell* (2002) 28 Cal.4th 381, 384, fn. 2; *People v.*

*[footnote continued on next page]*

5

1. *No Remand for Explanation of Award*

Defendant first argues the entire matter should be remanded to the trial court so it can more clearly explain how it arrived at $133,848.47 restitution award, including its calculations and the specific evidence upon which it relied. Defendant contends the judgment as explained at the September 28, 2011 hearing violates his Fourteenth Amendment right to adequate and effective appellate review. The People counter that defendant forfeited any right to raise this on appeal because he did not object to the calculations or evidentiary basis at the time. In the alternative, the People argue that the trial court clearly explained how it arrived at the award. We conclude that defendant waived the issue by failing to object below, but in any case the trial court's explanation of the judgment was sufficiently specific.

"[W]hen a defendant is convicted of a crime involving a victim who 'has suffered economic loss as a result of defendant's conduct' [citation], the court must require the defendant to pay full restitution directly to the victim or victims of the crime 'unless it finds compelling and extraordinary reasons for not doing so, and states those reasons on the record.' [Citations.] A 'defendant has the right to a hearing before a judge to dispute the determination of the amount of restitution.' [Citations.]" (*People v. Giordano* (2007) 42 Cal.4th 644, 651.)

_____

*[footnote continued from previous page]*
*Mesa* (1975) 14 Cal.3d 466, 471; *People v. Mitchell* (2001) 26 Cal.4th 181, 185.)
Therefore, the corrected restitution amount is $133,848.47.

6

If we were to treat this victim restitution award as a discretionary sentencing choice, then the forfeiture rule would apply under *People v. Scott* (1994) 9 Cal.4th 331. The forfeiture rule applies to claims involving the trial court's failure to state or give sufficient reasons for discretionary sentencing choices. (*Id.* at p. 351.) However, the courts have characterized victim restitution as a "'civil remedy rather than as a criminal punishment.' [Citation.] . . . . [T]he primary purpose of a victim restitution hearing is to allow the People to prosecute an expedited hearing before a trial court to provide a victim with a civil remedy for economic loss." (*People v. Millard* (2009) 175 Cal.App.4th 7, 35 (*Millard*).) In the civil context, a party must bring any deficiencies in the statement of decision to the attention of the trial court or waive the right to challenge the decision on appeal. (*In re Marriage of Arceneaux* (1990) 51 Cal.3d 1130, 1132-1133, 1137 [discussing Code of Civil Procedure sections 632 and 634].) Thus, because defendant did not make any objection whatsoever to the trial court's oral statement of its decision awarding restitution to Mr. Griffin, he waived his right to challenge on appeal any deficiencies in the trial court's explanation of the restitution award.

Even if we found no forfeiture, the trial court adequately explained the basis of the restitution award and so there would be no need to remand for a clearer explanation. The trial court stated that it arrived at the $133,848.47 by first adding together the eight promissory notes. These notes totaled $121,800. The court also pointed to the unsigned promissory note for $156,000 that defendant had proposed to give to Mr. Griffin to avoid prosecution, and described it as "some evidence . . . that [defendant] did acknowledge some obligation that he owed a large amount of money to Mr. Griffin." The court then

7

included 10 percent pre-judgment interest on five of the notes, and subtracted the value of the vehicles that Mr. Griffin eventually recovered from defendant after defendant's arrest. The court made it clear that it took each of the notes at face value, and did not credit at all defendant's testimony and documentary evidence that he had repaid a portion of the promissory notes. We find no deficiency in this explanation of the restitution amount imposed.

2. *The Promissory Notes are Substantial Evidence of The Amounts Loaned*

Defendant argues that the trial court cannot rely on the eight promissory notes to calculate the amount loaned because other evidence shows that Mr. Griffin lent him less than that amount, and that two of the notes are duplicates. We conclude that defendant did not carry his burden to disprove the amount of the loans established by Mr. Griffin using the promissory notes, and the trial court was entitled to credit Mr. Griffin's evidence and testimony over that presented by defendant.

"A restitution order is reviewed for abuse of discretion and will not be reversed unless it is arbitrary or capricious. [Citation.] No abuse of discretion will be found where there is a rational and factual basis for the amount of restitution ordered. '"[T]he standard of proof at a restitution hearing is by a preponderance of the evidence, not proof beyond a reasonable doubt."' [Citation.] Section 1202.4 does not, by its terms, require any particular kind of proof." (*People v. Gemelli* (2008) 161 Cal.App.4th 1539, 1542-1543 [Fourth Dist., Div. Two] (*Gemelli*).) In reviewing the sufficiency of the evidence, "[w]e do not reweigh or reinterpret the evidence; rather, we determine whether there is sufficient evidence to support the inference drawn by the trier of fact. [Citations.]"

(*People v. Baker* (2005) 126 Cal.App.4th 463, 469 (*Baker*).) "'[T]he court's discretion in setting the amount of restitution is broad, and it may use any rational method of fixing the amount of restitution as long as it is reasonably calculated to make the victim whole. [Citations.]' [ Citations.]" (*Millard, supra,* 175 Cal.App.4th at pp. 26-27.)

"Once the victim makes a prima facie showing of economic losses incurred as a result of the defendant's criminal acts, the burden shifts to the defendant to disprove the amount of losses claimed by the victim. [Citation.]" (*Gemelli, supra*, 161 Cal.App.4th at p. 1543.) The defendant has the burden of rebutting the victim's statement of losses. (*Ibid.*)

Here, the victim presented to the court eight promissory notes *signed by defendant* and testified as to their amounts, dates, and whether they were to carry interest. The table below, adapted from a similar table in defendant's opening brief, summarizes both Mr. Griffin's testimony and the information on the notes that were introduced into evidence.

|    | Date       | Amount   | Yearly Interest | Reporter's Transcript | Clerk's Transcript |
|----|------------|----------|-----------------|-----------------------|--------------------|
| 1. | 1/24/2007  | $6,250   | 12.9%           | 23-24                 | 110                |
| 2. | 11/17/2007 | $6,250   | 12.9%           | 24                    | 111                |
| 3. | 1/14/2008  | $7,100   | 15.00%          | 26-27                 | 112-113            |
| 4. | 10/23/2008 | $56,000  | 0%              | 31-32                 | 114                |
| 5. | 11/15/2008 | $21,000  | 0%              | 27-29                 | 115                |
| 6. | 12/02/2008 | $4,000   | 0%              | 29-31                 | 116                |
| 7. | 04/27/2009 | $10,600  | 12.9%           | 33                    | 117                |

| 8. | 04/27/2009 | $10,600 | 12.8% | 33-36 | 118 |
|---|---|---|---|---|---|
| | **Total** | **$121,800** | | | |

Defendant gave testimony that in part contradicted Mr. Griffin's testimony about the amounts loaned. First, defendant testified that the $56,000 promissory note was a "consolidation of other notes," but did not give any further explanation.[4] Second, defendant testified that one of the two promissory notes for $6,250 had been altered and that he was "not really sure" that they were for two separate transactions. Third, defendant testified that the last two notes (nos. seven and eight) for $10,600 each, were duplicate notes for a single loan, and that note number eight was intended to replace note number seven, with three vehicles added as additional security. However, on cross-examination, Mr. Griffin clarified that these last two promissory notes were not duplicates, despite having the same date.

The superior court, as the trier of fact, was entitled to, and expressly did,[5] credit Mr. Griffin's testimony and documentary evidence. Our review of the testimony and

---

[4] The three previous notes for $6,250, $6,250 and $7,100 total $19,600, not $56,000. Mr. Griffin testified that the $56,000 note included some amount ("I think it was $6,000") for interest and/or transaction fees because he obtained the money by a cash advance from his credit card.

[5] In explaining its decision, the trial court stated "I found that in evaluating the testimony of Mr. Wickham and Mr. Griffin that Mr. Griffin's recollection of events appeared to be clearer, more specific. Mr. Griffin appeared to more adequately explain all these various interwoven transactions. I thought Mr. Griffin's testimony was more compelling, convincing and persuasive. In determining credibility of witnesses, I think

*[footnote continued on next page]*

10

promissory notes does not persuade us that the trial court abused its discretion or based its decision on less than substantial evidence.

    3. *Substantial Evidence Supports the Conclusion that Defendant Did Not Repay Any of These Eight Loans*

Defendant also contends the evidence does not support the trial court's conclusion[6] that he never paid back any portion of the $121,800 in loans reflected in the eight promissory notes. Specifically, defendant argues the amount of the restitution award should be reduced by $26,830 that defendant proved he paid back to Mr. Griffin. As discussed below, substantial evidence supports the trial court's conclusion.

First, defendant asserts the evidence shows that Mr. Griffin received and successfully cashed seven separate checks worth $14,000 in total.[7] However, defendant ignores Mr. Griffin's testimony that these checks were in payment for other promissory notes that he returned to defendant.

---

*[footnote continued from previous page]*
the credibility of Mr. Wickham is somewhat suspect for a variety of reasons, including this conviction."

[6] "Other than the checks, [d]efendant has presented no written invoices, receipts, records or any other documentation pertaining to these large amounts of money that he admitted he owed which exceeded $100,000. It would seem to me it would be reasonable to assume that one engaged in paying these vast amounts of money towards various debts would have some documentation of the payments."

[7] Mr. Griffin actually testified that he received and successfully cashed six checks worth $12,000 in total. These check numbers and amounts are: 370286 for $2,000; 370383 for $2,000; 1104 for $1,000; 1093 for $1,000; 1157 for $3,000 and 1169 for $3,000.

Mr. Griffin testified on cross-examination that defendant had not paid back any of these eight promissory notes, but had repaid others, which Mr. Griffin would return to defendant marked "paid in full." "Nothing had been paid – on the checks that he give me that was good, he was repaid. But, see, when he paid a note off, I gave it to him and he done what he want to with it. Amount paid in full, and I handed it to him." Defendant's counsel questioned Mr. Griffin several times to clarify whether any of these seven checks that he had actually received and successfully cashed had been to repay any of the eight specified promissory notes. In response, Mr. Griffin consistently maintained that these checks had repaid other promissory notes, which he then marked "paid in full" and returned to defendant.

Second, defendant points to eight additional checks totaling $19,080, for which he submitted documentary proof to the court indicating the checks had cleared. These were not among the checks that Mr. Griffin stated he received and successfully cashed. In fact, Mr. Griffin testified regarding these eight checks that, of those he actually received, his signature was forged on some and others "bounced." Again, Mr. Griffin repeatedly testified, on both direct and on cross-examination, that any checks he received from defendant were to pay off other promissory notes that he then returned to defendant.

As the trier of fact, the trial court's task was to weigh the credibility of the testimony and reliability of the documentary evidence. Based on our review of the record, we cannot say that the trial court erred in choosing to believe Mr. Griffin over defendant. For this reason, substantial evidence supports the trial court's determination that defendant did not repay any of the amounts shown in the eight promissory notes.

12

4.  *The Pre-Judgment Interest Awarded Conforms With The Law*

Defendant argues the trial court made an error of law when it awarded defendant pre-judgment interest of ten percent on five of the promissory notes because these notes on their faces state usurious interest rates that are above the legal limit.  Specifically, defendant cites to *Rochester Capital Leasing Corp. v. K & L Litho Corp.* (1970) 13 Cal.App.3d 697, 703, for the proposition that the principal of a usurious transaction can be recovered in a civil action, but no interest at all can be recovered.

Neither the parties nor this court could find case or statutory law directly on point, that is, concerning whether a victim who is fraudulently induced to lend a defendant money at an interest rate higher than ten percent can collect the legal rate of interest when the defendant is ordered to pay victim restitution.  However, based on the purposes underlying the usury laws, the principal of "unclean hands," and the interest provisions set forth in section 1202.4, subdivision (f)(3)(G), we are not persuaded that the trial court acted incorrectly when it awarded Mr. Griffin ten percent pre-judgment interest on five of the loans.

We agree with the People's argument that "the law pertaining to determining victim restitution amounts compel a finding that a defendant who fraudulently obtains money from victims, such as [defendant] did in this case, has 'unclean hands' and should not be allowed to benefit from civil cases precluding the reimbursement of any interest rate to the victim."

The purpose of the usury laws is "'to protect the necessitous, impecunious borrower who is unable to acquire credit from the usual sources and is forced by his

economic circumstances to resort to excessively costly funds to meet his financial needs . . . .' [Citation.]" (*Ghirardo v. Antonioli* (1994) 8 Cal.4th 791, 804-805.) Here, defendant was not a poor, needy borrower who had no choice but to borrow money from Mr. Griffin to meet his financial needs. Rather, defendant told Mr. Griffin that he borrowed some of the money to invest in Mexican gold and "lumber deals," not to buy food or pay rent. Further, the record shows that defendant did not intend the transactions as loans secured by his enforceable promise to repay, but rather as a means to obtain money from Mr. Griffin under false pretenses. Defendant had a history of fraud and theft-related convictions for amounts more than $100,000 and, in fact, pled guilty to obtaining money from Mr. Griffin by false pretenses.

The doctrine of unclean hands prevents a party from obtaining either legal or equitable relief when that party has acted inequitably or with bad faith relative to the matter for which relief is sought. (*Camp v. Jeffer, Mangels, Butler & Marmaro* (1995) 35 Cal.App.4th 620, 638-639.) Here, defendant seeks the protection of usury laws to counteract the restitution statute discussed below, in order to avoid not just the usurious interest rates set forth in five of the promissory notes, but rather to avoid paying any pre-judgment interest on those notes at all. Again, defendant pled guilty to obtaining by false pretenses the money that was the subject of these notes. This is a textbook case of defendant acting "with bad faith relative to the matter for which relief is sought."

14

Finally, section 1202.4, subdivision (f)(3)(G),[8] specifically *requires* the trial court to order a criminal defendant to make restitution to the victim based on the amount of the loss claimed by the victim. The order *must* fully reimburse the victim for every economic loss caused by the defendant's criminal conduct, including 10 percent interest as of the date of the loss. This statute clearly authorized the trial court to impose 10 percent interest as of the date of the loss on each of the eight promissory notes, not only on the five notes that specified interest, but on the three notes for which zero interest was to be collected.

For these combined reasons—the lack of applicable case law to support his argument, the purpose of the usury laws, unclean hands, and the restitution statute itself, defendant has not convinced this court that he should be excused from paying any pre-judgment interest at all on the five interest-bearing promissory notes.

---

[8] That section reads, "(f) . . . in every case in which a victim has suffered economic loss as a result of the defendant's conduct, the court shall require that the defendant make restitution to the victim or victims in an amount established by court order, based on the amount of loss claimed by the victim or victims or any other showing to the court . . . [¶] . . . [¶] (3) To the extent possible, the restitution order shall be prepared by the sentencing court, shall identify each victim and each loss to which it pertains, and shall be of a dollar amount that is sufficient to fully reimburse the victim or victims for every determined economic loss incurred as the result of the defendant's criminal conduct, including, but not limited to, all of the following: [¶] . . . [¶] (G) Interest, at the rate of 10 percent per annum, that accrues as of the date of sentencing or loss, as determined by the court."

## DISPOSITION

The trial court's restitution order is affirmed.

CERTIFIED FOR PARTIAL PUBLICATION

RAMIREZ
P. J.

We concur:

RICHLI
J.

MILLER
J.

16