Filed 11/29/22  P. v. Garces CA2/1

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>EDWIN DAVID GARCES,<br><br>    Defendant and Appellant. | B320070<br><br>(Los Angeles County<br>Super. Ct. No. VA148434) |

APPEAL from a judgment of the Superior Court of Los Angeles County, John A. Torribio, Judge.  Affirmed in part and remanded with directions.

Sally Patrone Brajevich, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Noah P. Hill and Heidi Salerno, Deputy Attorneys General, for Plaintiff and Respondent.

—————————————

When Curtis Banks and Steven Lara confronted defendant and appellant Edwin David Garces about vandalizing their marijuana dispensary, Garces attacked both of them. The attack included Garces stabbing Banks nine times and seriously injuring him. A jury convicted Garces of one count each of willful, deliberate and premeditated attempted murder (Pen. Code,[1] §§ 187, subd. (a), 664, subd. (a)), assault with a deadly weapon (§ 245, subd. (a)(1)), and vandalism (§ 594, subd. (a)). In addition, the jury found that Garces personally used a knife in the attempted murder (§ 12022, subd. (b)(1)), that he inflicted great bodily injury (§ 12022.7, subd. (a)) in the attempted murder and the assault, and that he committed the crimes for the benefit of a criminal street gang.[2] (§ 186.22, subd. (b)(1)(C).)

Garces now challenges his convictions, arguing there was insufficient evidence that he acted with premeditation and deliberation in the attempted murder, and that the prosecutor committed misconduct during closing argument. He also contends that we must remand the case for a new sentencing hearing in light of a recently enacted law restricting the imposition of sentence enhancements. We affirm Garces's conviction but remand the case for a new sentencing hearing.

---

[1] Unless otherwise specified, subsequent statutory references are to the Penal Code.

[2] The court vacated the jury's finding on the gang enhancements in light of Assembly Bill No. 333 (2021-2022 Reg. Sess.) (Stats. 2021, ch. 699), which became effective after Garces's trial and which created new, more stringent substantive and procedural requirements for gang enhancements.

# FACTS AND PROCEEDINGS BELOW

On the evening of August 8, 2018, Lara and Banks were working at a marijuana dispensary in Huntington Park. Lara, the owner of the dispensary, saw two people spray-painting graffiti on the property's back gate; he told Banks that he wanted to go out and confront them. Lara opened the gate, and he and Banks saw Garces and a female companion walking away. Lara asked why the two had been tagging the dispensary's gate, but they did not respond. Lara and Banks followed Garces and his companion on foot and eventually caught up to them towards the end of the block. Garces turned around, pulled out a knife, and said, "What's up?" Lara and Banks turned to run back towards the dispensary, and Garces pursued Lara. Lara fell down when he reached the dispensary gate and said to Banks, "Curtis, Curtis, help me. He's about to stab me." Banks punched Garces twice, hitting him once on the side of his face. Garces turned to face Banks and began slashing the knife at him. Garces stabbed Banks once in each arm and once in the chest as Banks tried to defend himself. Banks fell backward onto the ground, and Garces continued attacking him with the knife. Garces kicked Banks in the head, said "38th Street. This is my 'hood,' " and ran away. Surveillance video footage showed Garces chasing Lara and Banks, but the stabbing occurred off-camera.

Banks suffered nine stab wounds to his arms, chest, and his left thigh, all of which penetrated through the muscles beneath the skin. By the time he arrived at a hospital, he had lost 20 percent of his blood volume and, according to the surgeon who treated him, might have died if he had not received prompt treatment.

3

A police officer encountered Garces in the parking lot of a nearby restaurant soon after the stabbing. The officer pursued Garces on foot and, after arresting him, recovered a knife that Garces threw away during the chase.

Garces testified in his own defense. He admitted vandalizing the gate outside the dispensary, but claimed that Banks started the fight by punching him in the face. Garces testified that he initially fought back with his fists, and that he took his knife out when Lara joined in and struck him with a heavy metal object.[3] Garces said he warned Lara and Banks that he had a knife, and he stabbed Banks only after Banks continued punching him.

The trial court sentenced Garces to 16 years to life in prison. The sentence consisted of seven years to life for premeditated attempted murder of Banks (§§ 187, subd. (a), 664, subd. (a)), plus the low term of two years for assault with a deadly weapon of Lara (§ 245, subd. (a)(1)), plus seven years in enhancements for personally using a knife (§ 12022, subd. (b)(1)) and inflicting great bodily injury (§ 12022.7, subd. (a)). The court sentenced Garces to a concurrent term of six months for vandalism (§ 594, subd. (a)).

## DISCUSSION

### A.   *Substantial Evidence Supported the Jury's Finding of Premeditation and Deliberation*

Garces contends that there was no substantial evidence to support the jury's finding that he acted with premeditation and

_____

[3] Arresting officers did not notice any injuries to Garces other than redness to his chest. There was blood on his clothing but not his face or body, and the blood belonged to Banks.

4

deliberation in the attempted murder of Banks.  He argues that all the evidence at trial indicated that "the stabbing was an impulsive reaction to the confrontation, with no time to reflect between the rapid stab wounds."  We are not persuaded.

Substantial evidence is "evidence which is reasonable, credible, and of solid value from which a rational trier of fact could find defendant guilty beyond a reasonable doubt."  (*People v. Cage* (2015) 62 Cal.4th 256, 275.)  When we review for substantial evidence, "[w]e do not reweigh the evidence or revisit credibility issues, but rather presume in support of the judgment the existence of every fact that could reasonably be deduced from the evidence."  (*People v. Alvarez* (2009) 178 Cal.App.4th 999, 1004.)  We may reverse only if "no rational trier of fact reasonably could have found defendant[ ] guilty" on the basis of the evidence.  (*People v. Letner and Tobin* (2010) 50 Cal.4th 99, 166.)

"The crime of attempted murder is not divided into degrees, but the sentence can be enhanced if the attempt to kill was committed with premeditation and deliberation."  (*People v. Gonzalez* (2012) 54 Cal.4th 643, 654.)  Courts have developed the jurisprudence of premeditation and deliberation primarily in cases involving first degree murder, but the same analysis applies in cases of attempted murder.  (See, e.g., *People v. Lenart* (2004) 32 Cal.4th 1107, 1127-1128.)  The Supreme Court has "identified 'three basic categories' of evidence [it] has generally found sufficient to sustain a finding of premeditation and deliberation: (1) planning activity, or 'facts about how and what defendant did *prior* to the actual killing which show that the defendant was engaged in activity directed toward, and explicable as intended to result in, the killing'; (2) motive, or

5

'facts about the defendant's *prior* relationship and/or conduct with the victim from which the jury could reasonably infer a "motive" to kill the victim'; and (3) manner of killing, or 'facts about the nature of the killing from which the jury could infer that the *manner* of killing was so particular and exacting that the defendant must have intentionally killed according to a "preconceived design" to take his victim's life in a particular way for a "reason." ' " (*People v. Morales* (2020) 10 Cal.5th 76, 88-89, quoting *People v. Anderson* (1968) 70 Cal.2d 15, 26-27.)

These " ' "guidelines are descriptive and neither normative nor exhaustive, and . . . reviewing courts need not accord them any particular weight." ' [Citation.]" (*People v. Morales, supra*, 10 Cal.5th at p. 89.) Ultimately, an attempted murder " ' " 'is premeditated and deliberate if it occurred as the result of preexisting thought and reflection rather than unconsidered or rash impulse.' " [Citations.] "The true test is not the duration of time as much as it is the extent of the reflection. Thoughts may follow each other with great rapidity and cold, calculated judgment may be arrived at quickly." ' " (*Id.* at p. 88.)

In this case, there was sufficient evidence to support the jury's finding that Garces acted with premeditation and deliberation in attempting to kill Banks. Garces argues the attack was impulsive, and "sparked by the victim's aggression." That is certainly one inference that could be drawn from the evidence, but it is not the only one. Although the confrontation between Garces, Lara, and Banks occurred quickly, Garces had time to reflect and deliberate before he attacked. Garces walked away from the dispensary, appearing to ignore Lara and Banks even as Lara asked him why he had tagged the gate. Then suddenly Garces stopped, drew his knife, turned around, said

"What's up?" and charged after individuals that were no longer posing any threat to him. A jury could reasonably infer from this sequence of events that Garces planned his actions while being trailed by Lara and Banks as they demanded answers from him, and waited until the right moment before turning on Banks and Lara and charging at them with his knife drawn. When Lara and Banks tried to run away, Garces pursued them for a meaningful distance down the street and back up to the dispensary before using the knife—further evidencing his premeditation and deliberation. Once Garces began stabbing Banks, he did so nine times including twice in the chest just barely missing Banks's heart. The jury could reasonably infer from the number of stab wounds as well as their location that Garces acted with reflection and a deliberate intent to kill. (E.g., *People v. Potts* (2019) 6 Cal.5th 1021, 1028 [" 'plunging a lethal weapon into the chest evidences a deliberate intention to kill' "], quoting *People v. Anderson, supra,* 70 Cal.2d at p. 27.)

In addition, there was evidence indicating Garces had a motive for attacking. He had just spray-painted the name of his gang and his moniker on the gate of the dispensary. After the stabbing, Garces stood over Banks, stated his gang's name and "This is my hood." The prosecution's gang expert testified that gang members commit acts of vandalism to mark their territories and instill fear in the community. The jury could have reasonably concluded that Garces was concerned Banks was publicly challenging the gang's dominance by confronting Garces after the tagging, and that it was necessary to attempt killing Banks for the benefit of the gang to maintain that dominance.

When we review a verdict for substantial evidence, we do not substitute our own judgment for that of the jury. (*People v.*

7

*Ceja* (1993) 4 Cal.4th 1134, 1139.) We ask only "whether a reasonable trier of fact could have found [the defendant] guilty beyond a reasonable doubt." (*People v. Nelson* (2016) 1 Cal.5th 513, 550.) Under that deferential standard, we must affirm the jury's finding that Garces acted with premeditation and deliberation in committing the attempted murder.

## B. *The Prosecutor's Misstatements in Closing Argument Did Not Prejudice Garces*

Garces contends that the prosecutor committed misconduct during closing argument by referring to matters outside the record, by vouching for Banks's credibility, and by misstating the law. We agree with some of Garces's claims, but we nevertheless affirm his convictions because he has failed to show that the prosecutor's conduct prejudiced him.

### 1. *Legal Background*

"A prosecutor is held to a standard higher than that imposed on other attorneys because of the unique function he or she performs in representing the interests, and in exercising the sovereign power, of the state." (*People v. Hill* (1998) 17 Cal.4th 800, 820.) "The standards governing review of [prosecutorial] misconduct claims are settled. 'A prosecutor who uses deceptive or reprehensible methods to persuade the jury commits misconduct, and such actions require reversal under the federal Constitution when they infect the trial with such " 'unfairness as to make the resulting conviction a denial of due process.' " (*Darden v. Wainwright* (1986) 477 U.S. 168, 181 [106 S.Ct. 2464, 91 L.Ed.2d 144]; see *People v. Cash* (2002) 28 Cal.4th 703, 733 . . . .) Under state law, a prosecutor who uses such methods commits misconduct even when those actions do not result in a fundamentally unfair trial.' (*People v. Alfaro* (2007) 41 Cal.4th

8

1277, 1328 . . . .) 'In order to preserve a claim of misconduct, a defendant must make a timely objection and request an admonition; only if an admonition would not have cured the harm is the claim of misconduct preserved for review.' (*Ibid.*) When a claim of misconduct is based on the prosecutor's comments before the jury, ' "the question is whether there is a reasonable likelihood that the jury construed or applied any of the complained-of remarks in an objectionable fashion." ' [Citations.]" (*People v. Friend* (2009) 47 Cal.4th 1, 29.) To establish a claim of misconduct, "bad faith on the prosecutor's part is not required. (*Hill*[, *supra*,] at pp. 822-823.) '[T]he term prosecutorial "misconduct" is somewhat of a misnomer to the extent that it suggests a prosecutor must act with a culpable state of mind. A more apt description of the transgression is prosecutorial error.' (*Id.* at p. 823, fn. 1.)" (*People v. Centeno* (2014) 60 Cal.4th 659, 666-667.)

  2. *Referring to Matters Outside the Record*

  Garces contends the prosecutor committed misconduct during closing argument by suggesting that Lara declined to testify because Garces's gang had intimidated him, when nothing in the record supported that claim. The prosecutor told the jury that gangs have negative effects on communities, then continued, "As a matter of fact, here we didn't have Steven Lara. I had to prove an entire count without that person here because there's no way he wants anything to do with this case." Garces's attorney objected, and the trial court ordered the jury to disregard the comment. The prosecutor continued, "You heard from the experts. There's a reason why witnesses and victims don't show up." Again, Garces's attorney objected, and the court sustained the objection.

9

We agree with Garces that these statements were improper.[4]  Referring to matters outside the record during closing argument is "clearly . . . misconduct" (*People v. Pinholster* (1992) 1 Cal.4th 865, 948, disapproved on another ground in *People v. Williams* (2010) 49 Cal.4th 405, 459) because it is both unfair and difficult for the defendant to refute facts that were never presented in court in the first place.  (*People v. Benson* (1990) 52 Cal.3d 754, 794.)  The prosecutor thus " ' "circumvent[s] the rules of evidence" ' " (*People v. Hill, supra*, 17 Cal.4th at p. 828) and introduces considerations the jury otherwise would not have heard about.  In addition, a prosecutor commits misconduct by violating a prior court ruling.  (*People v. Crew* (2003) 31 Cal.4th 822, 839.)  The prosecutor might not have intended to disobey the court's ruling, but by pursuing the same argument the court had just rejected, she did so.

It does not follow, however, that these misstatements require reversing Garces's convictions.  Prosecutorial misconduct requires reversal "under the federal Constitution when it ' "so infect[s] the trial with unfairness as to make the resulting conviction a denial of due process." ' [Citations.]"  (*People v. Cash, supra*, 28 Cal.4th at p. 733.)  Misconduct under state law does not require reversal "unless it is reasonably possible that the jury would have reached a result more favorable to the defendant had the misconduct not occurred." (*People v. Gonzales and Soliz* (2011) 52 Cal.4th 254, 319.)

---

[4] We disagree with Garces that these statements also shifted the burden to the defense to prove why Lara was unavailable to testify.  The reason for Lara's absence was not an element of the charges against Garces, and neither party bore the burden of proving why he was missing.

The prosecutor's conduct in this case does not meet either of these thresholds for reversal. The question of Lara's absence was not of central importance to the case. Garces was not accused of dissuading Lara from testifying, and even in the absence of Lara, the jury heard full accounts of the day's events from Banks and from Garces himself, and saw surveillance video footage of part of the attack. The court sustained objections to the comments from the prosecutor and told the jury to disregard the prosecutor's statement. An admonition to the jury to disregard a prosecutor's statement is ordinarily "sufficient to cure any harm." (*People v. Tate* (2010) 49 Cal.4th 635, 689.)

The insinuation that Lara was too intimidated to testify may have prejudiced Garces, but even if the prosecutor had not made those statements, the jury still would have heard testimony that Garces was a member of a gang that regularly assaulted and killed its enemies. In comparison with this testimony, the effect of the prosecutor's statements on the jury was minimal.

3.    *Vouching for Banks*

Garces contends that the prosecutor committed misconduct by vouching for the veracity of Banks's testimony. He points to a moment during closing argument when the prosecutor said, "If you look at what Curtis Banks said—and mind you, nothing he said, nothing, not a bit of his testimony was attacked. There is no evidence to show that he was lying."

We disagree that this argument was improper. The prosecutor did not vouch for Banks "by referring to evidence outside the record" or by "plac[ing] the prestige of her office behind a witness by offering the impression that she has taken steps to assure a witness's truthfulness at trial." (*People v. Frye* (1998) 18 Cal.4th 894, 971, disapproved on another ground in

11

*People v. Doolin* (2009) 45 Cal.4th 390, 421, fn. 22.) Instead, the prosecutor argued that the jury should infer that Banks had testified honestly "based on the 'facts of [the] record and the inferences reasonably drawn therefrom, rather than any purported personal knowledge or belief.' " (*Ibid.*) The credibility of Banks was a key issue at trial, as the jury had to resolve the competing testimony from Banks and Garces about what happened between the two of them. The prosecutor's comments were proper argument on this important issue. (See *ibid.*)

4. *Arguing that Garces's Membership in a Gang Was Proof of Intent to Kill*

Garces contends that the prosecutor misled the jury by suggesting that his mere membership in a gang was proof that he acted with an intent to kill when he attacked Banks. During rebuttal argument, the prosecutor argued that Garces's actions were willful, deliberate, and premeditated. She told the jury, "when the defendant joined the gang, a part of that membership is a willingness to kill." The court sustained its own objection to this argument, but Garces's attorney did not ask the court to admonish the jury to disregard the statement. The prosecutor then continued, "when you join gangs, when you want to rise up in gangs, you have to be willing to put in work. You heard it from the [prosecution's gang expert]. And part of that work is assault, it's murder." This time, neither the court nor Garces's attorney objected to the prosecutor's statement.

We need not decide whether these statements were improper because Garces forfeited them by failing to "make a timely objection *and request an admonition.*" (*People v. Alfaro, supra*, 41 Cal.4th at p. 1328, italics added.) Even if we ignore the forfeiture, Garces's claim fails because Garces has failed to show

12

that the prosecutor's first statement prejudiced him, and the follow-up statements were within the bounds of fair argument.

The prosecutor's first statement was arguably improper, in that it implicitly equated gang membership with a willingness to kill. This may have suggested to the jurors that they could take Garces's admitted membership in a gang as proof of one of the elements of attempted murder. " ' "[I]t is improper for the prosecutor to misstate the law generally [citation], and particularly to attempt to absolve the prosecution from its prima facie obligation to overcome reasonable doubt on all elements" ' " of an offense. (*People v. Bell* (2019) 7 Cal.5th 70, 111.)

This argument could not have prejudiced Garces under either the federal or state standard, however, because the court intervened immediately and ordered the jury to disregard the statement. The prosecutor then clarified her point in a way that corrected the error.

In her follow-up statements, the prosecutor did not suggest that gang membership was tantamount to proof of intent to kill, but rather that assault and murder were central activities of Garces's gang, and that members were expected to be willing to commit these offenses for the benefit of the gang. These statements were essentially a summary of the testimony from the prosecution's gang expert, and proper comment on evidence that had been admitted during the trial. If any jurors were still confused, the jury instructions stated the relevant law accurately.

C. ***The Case Must Be Remanded for Resentencing under Senate Bill No. 81***

In 2021, the Legislature enacted Senate Bill No. 81 (2021-2022 Reg. Sess.) (Stats. 2021, ch. 721), which amended section 1385 to provide new guidelines for trial courts in imposing

sentence enhancements.[5]  Under the law as revised, the court must consider several potential mitigating factors before imposing a sentence enhancement.  In particular, the law provides that if "application of an enhancement could result in a sentence of over 20 years[,] . . . the enhancement shall be dismissed."  (§ 1385, subd. (c)(2)(C).  Because this "change[ ] in the law . . . allow[s] for a possibility of reduced punishment" (*People v. Sek* (2022) 74 Cal.App.5th 657, 666), it applies retroactively to defendants like Garces whose convictions were not yet final when the law became effective.  We agree with both Garces and the Attorney General that we must remand the case to the trial court for resentencing.

Garces and the Attorney General also argue that the court must correct an error in the minute order from the sentencing hearing.  Under section 1202.4, subdivision (f)(3)(G), victim restitution includes "[i]nterest, at the rate of 10 percent per annum, that accrues as of the date of sentencing or loss."  The trial court ordered Garces to pay $331.24 in victim restitution but did not mention interest.  Nevertheless, the minute order from the sentencing hearing added 10 percent interest per year to the restitution order.  Because "[t]he oral imposition of sentence constitutes the judgment in an action, and the minutes cannot add anything substantive to the oral pronouncement" (*People v. El* (2021) 65 Cal.App.5th 963, 967), both Garces and the Attorney

---

[5] The Legislature subsequently enacted Assembly Bill No. 200 (2021-2022 Reg. Sess.) (Stats. 2022, ch. 58, § 15), which amended section 1385 to correct a clerical error introduced by Senate Bill No. 81.

General agree that we must remand the case to the trial court to correct the minute order.

In light of the order for a new sentencing hearing, the issue regarding interest is moot. Because the trial court must hold a new sentencing hearing to give Garces the benefit of the new amendments to section 1385, his previous sentence and the associated minute order will be vacated. We note, however, for the benefit of the parties at the new sentencing hearing, that a restitution "order *must* fully reimburse the victim for every economic loss caused by the defendant's criminal conduct, including 10 percent interest as of the date of the loss." (*People v. Wickham* (2013) 222 Cal.App.4th 232, 238.) A sentence that fails to impose restitution as required is unauthorized and "must be vacated and the proper sentence imposed whenever the matter is brought to the attention of the trial or reviewing court." (*People v. Turrin* (2009) 176 Cal.App.4th 1200, 1205.)

## DISPOSITION

The judgment of conviction is affirmed.  Garces's sentence is vacated, and the case is remanded to the trial court for a new sentencing hearing.

NOT TO BE PUBLISHED


WEINGART, J.*


We concur:


CHANEY, J.


BENDIX, Acting P. J.

---

*Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.