Filed 3/20/26  P. v. Jackson CA2/1

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| THE PEOPLE, | B340655 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. BA514100) |
| v. | |
| JAYLIN TYREESE JACKSON, | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, David V. Herriford, Judge.  Affirmed.

Stanley Dale Radtke, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Charles C. Ragland, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Seth P. McCutcheon and Zachary John Crvarich, Deputy Attorneys General, for Plaintiff and Respondent.

———————————————

Defendant Jaylin Tyreese Jackson appeals from a restitution order following his conviction by plea of assault with a deadly weapon. Defendant argues there was insufficient evidence to support restitution for lost wages because the victim's testimony was equivocal and the prosecution provided no documentary evidence. Defendant further argues the victim has "unclean hands" because her wages were unreported and untaxed, and therefore is not entitled to restitution for loss of those wages.

We hold the victim's testimony provided sufficient basis to award restitution for lost wages. Further, it is defendant, not his victim, who has unclean hands, and he therefore may not raise his victim's tax circumstances as a defense to paying restitution for the assault he committed. The record, moreover, does not establish the victim's wages were unreported and untaxed.

Accordingly, we affirm.

## FACTUAL BACKGROUND

On the morning of April 15, 2023, wife F.R. and husband L.M. arrived at the parking lot of their workplace. L.M. got out of the car and opened the gate to the parking lot. As F.R. drove the car through the gate, defendant walked towards them from the street. L.M. saw defendant put brass knuckles on his hand and strike the car's window, which did not break.

Defendant returned to the street and retrieved a hammer. L.M. picked up a pipe to defend himself. Defendant struck the driver's side window of the car with the hammer, breaking it. Defendant then struck F.R. on the arm with the hammer and on the temple with his fist.

L.M. moved forward to protect F.R.  Defendant ran.  L.M. chased defendant and tackled him.  Defendant bit L.M. on the arm.  L.M. held defendant until police arrived.

## PROCEDURAL BACKGROUND

An information charged defendant with two counts of assault with a deadly weapon.  Pursuant to an agreement with the People, defendant pleaded no contest to the assault on F.R. and admitted a prior strike conviction.  The trial court convicted defendant of that count and dismissed the count for assault of L.M.  The court sentenced defendant to four years in prison.

Several months later the trial court held a restitution hearing, with defendant's appearance waived.  In advance of the hearing, F.R. and L.M. submitted victim restitution request forms.  F.R. sought restitution for wage loss.  Her request form stated a wage of $600 per week, and requested total lost wages of $15,000.  F.R. and L.M. also sought reimbursement for medical expenses, a broken car window, and security cameras they installed in their home following the assault.

F.R. testified at the restitution hearing through an interpreter.  She explained that before the attack, she worked four days a week and was paid $80 per day.  The prosecutor asked, "So each week you receive[d] $320 per week?"  F.R. said, "Yes."  The prosecutor asked why F.R. had listed a weekly wage of $600 on the restitution request form.  F.R. responded that $600 was what she received every week from a woman, E.P.  The prosecutor asked if that $600 included the $80 per day plus other charges, and F.R. answered she was paid an additional "small amount" for purchasing meat and vegetables for E.P.

F.R. explained she was unable to work following the attack because she was afraid to return to the area where the crime had

3

taken place.  The prosecutor asked how much work F.R. missed because of the attack, and she said approximately six weeks.

The prosecutor asked F.R. what she was requesting in lost wages.  F.R. said, "I'm not asking for anything.  I don't want to be here.  I don't want to be here.  I don't want him to be released.  And what if he does something to me because I'm accusing — " The prosecutor asked why F.R. was changing her request.  F.R. said, "Because, honestly, I don't want to cause anybody more trouble because all of these . . . .  It is not a large amount that I'm going to request.  All I want is that what happened to me won't happen to anybody else."  The prosecutor asked if F.R. was still requesting the $15,000 listed on her restitution request form.  F.R. said, "$15,000?  No.  All I said is what I spent."

On cross-examination, F.R. repeated she received $80 per day as salary, and would receive an additional $20 or $30 dollars twice a week for shopping for E.P.  Defense counsel asked how much of the $320 weekly salary F.R. took home after taxes, and F.R. said, "I don't do taxes.  My husband does."  Defense counsel asked if F.R. "pa[id] taxes on the $320 that you received as salary," and F.R. said, "No."

On redirect examination, the prosecutor again asked about the $600 weekly wages listed on F.R.'s restitution request form.  F.R. responded, "Because it's two of us:  my husband and myself." The prosecutor asked, "So is that for the two of you or is that for just you?"  F.R. answered, "No.  That's for the two of us, because he works."  The prosecutor asked if F.R.'s husband was still working after F.R. stopped working "or did that work completely stop?"  F.R. answered, "It stopped."  The prosecutor said, "So then even though you said you were getting yourself $80 a day, in reality the work that you were doing between the two of you was

4

$600 a week; is that correct?" F.R. answered, "[S]he would give us $600 a week for everything we did . . . . Because she used to pay me $80. I only worked four days. But because I did the shopping for the things for the lady that was $600. She sort of — she would give me extra."

The trial court stated it was inclined to award F.R. $220 for the broken window, $3,600 for lost wages ($600 per week for six weeks), and $5,670 in medical expenses. Defense counsel objected, arguing F.R.'s lost wages should be calculated at $320 per week plus the additional $50 she earned from shopping, for a total of $2,220 in lost wages. Defense counsel stated the defense would not object to restitution in that amount. The court responded, "[S]he's testifying that she and her husband combined get [$600 per week] and as a result of the incident they're both not working, so I think it's appropriate to award her the $600 a week times six[ ]weeks."

The trial court awarded $9,490.00 in victim restitution, which included the $3,600 for lost wages. Defendant timely appealed from the restitution order.

## DISCUSSION

Defendant on appeal challenges the $3,600 awarded for lost wages. He does not otherwise challenge the restitution order.

"[I]n every case in which a victim has suffered economic loss as a result of the defendant's conduct, the court shall require that the defendant make restitution to the victim or victims in an amount established by court order, based on the amount of loss claimed by the victim or victims or any other showing to the

5

court." (Pen. Code, § 1202.4, subd. (f).)[1] "The court shall order full restitution." (Pen. Code, § 1202.4, subd. (f).)

The standard of proof for restitution is preponderance of the evidence. (*People v. Shelly* (2022) 81 Cal.App.5th 181, 198 (*Shelly*).) " 'Once the victim makes a prima facie showing of economic losses incurred as a result of the defendant's criminal acts, the burden shifts to the defendant to disprove the amount of the losses claimed by the victim.' [Citations.]" (*Id.* at p. 199.)

"We review a restitution order for abuse of discretion, and we must uphold the amount of restitution if there is a factual and rational basis for it." (*People v. Anderson* (2025) 110 Cal.App.5th 1256, 1260. "Courts broadly construe the right to restitution." (*Ibid.*)

F.R.'s testimony provided a factual and rational basis for the award of lost wages. Although she testified her weekly wage was $320 plus approximately $50, on redirect examination she explained the $600 weekly wage listed on her restitution request included her husband's wages as well. F.R. also testified she and her husband were out of work for six weeks following the attack. This testimony supported the $3,600 award.

Defendant argues there was no factual basis for awarding lost wages as restitution because "there was a lack of any documentation presented in support." This argument fails because case law holds that a victim's testimony may be prima facie evidence of a loss. (*Shelly*, *supra*, 81 Cal.App.5th at p. 199; see *People v. Millard* (2009) 175 Cal.App.4th 7, 30 [testimony of

---

[1] There are exceptions to this rule, but none is relevant here. (See Pen. Code, § 1202.4, subds. (f), (p), (q).)

victim and victim's attorney sufficient prima facie showing of lost wages.)

Defendant cites *People v. Harvest* (2000) 84 Cal.App.4th 641 in support of his argument that lack of documentation is fatal to a restitution claim. In *Harvest*, the trial court awarded the families of two murder victims, Vigil and Gialouris, restitution for funeral expenses. (*Id.* at p. 645.) The Court of Appeal reversed the award to Gialouris's family, explaining, "The Vigil family could support their claim with documentation and stood ready to testify, but the Gialouris claim had neither of these supports." (*Id.* at p. 653.) *Harvest* stands for the proposition that the absence of both documentary evidence and testimony can doom a restitution request, but does not hold or suggest that testimony alone cannot support a restitution request.

*People v. Vournazos* (1988) 198 Cal.App.3d 948 (*Vournazos*), also cited by defendant, similarly does not support his argument. The trial court in *Vournazos* awarded a car theft victim restitution for damage to the recovered car and the loss of personal property taken with the car but never recovered. (*Id.* at pp. 952–953.) The only evidence offered at the restitution hearing was the testimony of the defendant's probation officer, who determined an amount of restitution based on the victim's written statement of loss and the probation officer's discussions with the victim. (*Ibid.*) The probation officer requested documentation from the victim's bookkeeper to support the amounts claimed, but the bookkeeper did not provide it. (*Id.* at p. 953.)

The Court of Appeal held the evidence did not support the amount of restitution awarded. (*Vournazos*, *supra*,

7

198 Cal.App.3d at p. 958.) The court noted restitution for damaged or stolen property " 'shall be the replacement cost of like property, or the actual cost of repairing the property . . . .' [Citations." (*Ibid.*) Yet "[n]either the [written restitution request] nor the testimony of the probation officer established that the sum claimed by [the victim] for loss of property was based on the replacement cost of the property. Further, there was no evidence that the sum of $300 claimed for repair of damage to the Mercedes represented the actual cost of the repair." (*Ibid.*)

The flaw with the evidence in *Vournazos* was not that it was testimony as opposed to documents, but rather, that it did not explain how the victim calculated the amount of restitution claimed. That is, the evidence did not establish that the victim was seeking repair and replacement costs as opposed to some other amount. *Vournazos* does not hold that testimony alone cannot support an award of restitution, just that the specific testimony in that case was inadequate.

Defendant suggests the award was improper because F.R. "retracted her demand for lost wages during her testimony." In support, he refers to F.R.'s statement, when asked what she was seeking for lost wages, "I'm not asking for anything." F.R. immediately followed this statement, however, with, "I don't want to be here. I don't want to be here. I don't want him to be released. And what if he does something to me because I'm accusing — " The trial court reasonably could conclude F.R. was not withdrawing her request, but rather expressing her fear of defendant and her desire to no longer be part of the proceedings.

Defendant argues F.R.'s wages were "under the table," meaning "not reported or taxed," and therefore pursuant to the

8

doctrine of unclean hands, she is not entitled to recover them in restitution. Assuming arguendo a defendant may assert an unclean hands defense for the first time on appeal,[2] the argument fails on the merits.

"The doctrine of unclean hands prevents a party from obtaining either legal or equitable relief when that party has acted inequitably or with bad faith relative to the matter for which relief is sought." (*People v. Wickham* (2013) 222 Cal.App.4th 232, 238 (*Wickham*).

*Wickham* is an illustration of the doctrine of unclean hands applied in the context of victim restitution. In *Wickham*, the defendant was convicted of theft by false pretenses after he failed to repay money he had persuaded an elderly man to lend him. (*Supra*, 222 Cal.App.4th at pp. 234–236.) The trial court ordered the defendant to pay restitution with statutory interest accruing as of the date of the restitution award. (*Id.* at p. 236.) On appeal, the defendant argued he should not have to pay interest on the restitution amount because the interest rates the elderly man had imposed on the loans to the defendant violated usury laws. (*Id.* at p. 237.) The Court of Appeal held the defendant's conviction for "obtaining by false pretenses the money that was the subject of" the purportedly usurious loans was "a textbook case of [the] defendant acting 'with bad faith relative to the matter for which relief is sought.' " (*Id.* at p. 238.) Thus, the doctrine of unclean hands prevented defendant from "seek[ing]

---

[2] As noted in the Procedural Background, *ante*, defense counsel below did not argue that F.R. was not entitled to her lost wages, only that F.R.'s testimony supported an award of $2,220 rather than $3,600.

9

the protection of usury laws to counteract the restitution statute." (*Ibid.*)

Just as in *Wickham*, it is defendant, and not his victim, F.R., who has unclean hands. In *Wickham*, the defendant's unclean hands — in that case his theft of money — barred him from raising a usury argument to avoid restitution of that money. Here, similarly, defendant effectively deprived F.R. of wages by assaulting and traumatizing her. Thus, his unclean hands bar him from raising the contention F.R. is not entitled to restitution because she purportedly did not pay taxes on her wages.

Further, the record does not establish F.R.'s wages were unreported and untaxed. The trial court made no such findings, nor did defense counsel request such findings. Defense counsel asked F.R. about her net wage after taxes, and F.R. indicated her husband was in charge of the family's taxes. Defense counsel then asked if F.R. "pa[id] taxes on the $320 that you received as salary," and F.R. said, "No." Given F.R. had just said her husband handled the family's taxes, however, it is not clear F.R. was stating definitively no tax was paid on her wages, or simply that she personally did not pay the taxes. We also cannot conclude from the absence of documentary evidence of F.R.'s wages, which defense counsel did not request, that the wages were unreported and untaxed. Thus, even if defendant's own unclean hands did not bar him from raising his tax argument, the record does not support that argument.

In his reply brief, defendant argues F.R.'s testimony that she was unable to work due to fear was insufficient justification to entitle her restitution for lost wages. This argument is doubly forfeited for failure to raise it in the trial court or in defendant's opening brief. (*GoTek Energy, Inc. v. SoCal IP Law Group, LLP*

10

(2016) 3 Cal.App.5th 1240, 1248; *Hurley v. Department of Parks & Recreation* (2018) 20 Cal.App.5th 634, 648, fn. 10.)  Nor does defendant cite any authority that missing work due to fear of additional attacks is an insufficient basis to award victim restitution.  (*People v. Dougherty* (1982) 138 Cal.App.3d 278, 282–283 [argument forfeited for lack of legal authority].)

## DISPOSITION

The restitution order is affirmed.
NOT TO BE PUBLISHED.


BENDIX, Acting P. J.


We concur:



WEINGART, J.



M. KIM, J.


11